[No. B027696. Second Dist., Div. Five. Apr. 10, 1989.]

ROGER BURRELL, Plaintiff and Appellant, v.
CITY OF LOS ANGELES et al., Defendants and Appellants.

LOS ANGELES CITY EMPLOYEES UNION et al., Plaintiffs and Respondents, v.
BOARD OF CIVIL SERVICE COMMISSIONERS, Defendants and Appellants.

COUNSEL

James K. Hahn, City Attorney, Frederick N. Merkin and Robert Cramer, Assistant City Attorneys, for Defendants and Appellants.

Marr & Marchant, Cecil Marr and Diane Marchant for Plaintiffs, Respondents and Appellant.

OPINION

BOREN, J.—In this consolidated appeal, we consider the constitutionality of a portion of section 112 of the City Charter of Los Angeles. Section 112 gives a city employee the right to have the disciplinary measures ordered by an official in his or her department reviewed by the board of civil service commissioners (the Board). However, this charter provision limits the ability of the Board to reduce the disciplinary penalty by requiring that any reduction in the penalty recommended by the Board be consented to by the same official who originally imposed the discipline. In both of the cases before us, the trial courts declared unconstitutional the consent requirement of section 112, finding that it amounts to a denial of the due process rights of city employees to a fair and impartial hearing.

FACTS

This appeal consolidates two separate trial court actions: Los Angeles City Employees Union v. Board of Civil Service Commissioners (Super. Ct.

L.A. County, No. C603176) (the Godino case) and Burrell v. City of Los Angeles (Super. Ct. L.A. County, No. C633835) (the Burrell case).

a. *The Godino Case*

The City of Los Angeles employed Richard Godino as the aquatic director of the department of recreation and parks' Pacific Region. In 1985, Godino was accused of failing to follow proper departmental procedures for the handling of money, resulting in the loss of some $2,017 in parking revenues. James Hadaway, the department's general manager, ordered a 10-working day disciplinary suspension of Godino. Godino appealed Hadaway's decision to the Board pursuant to section 112 of the city charter.

Godino appeared before a civil service hearing examiner on November 20, 1985, for a hearing in which written evidence was offered and testimony was taken. Based on the evidence, the hearing examiner stated in her report to the Board that the charge of improper money handling was insufficient to warrant a two-week suspension, and recommended that the penalty be reduced to a "Notice to Correct." The department of recreation and parks objected to the hearing examiner's recommendation of a lesser penalty and requested that the Board sustain the charges, as well as the suspension. In its objection, the department introduced new evidence of instances of improper money handling by other employees, and the penalties imposed for those infractions. The hearing examiner had not considered this evidence. The Board then met on February 7, 1986, to decide the Godino appeal. All the commissioners present agreed that the 10-day punishment was too harsh, and unanimously requested that the department consider a shorter suspension period. At a second meeting of the Board held the following month, general manager Hadaway refused to diminish the punishment he had ordered; and the Board—feeling constrained by the dictates of section 112—reluctantly sustained the penalty which Hadaway wanted.

Godino next sought declaratory judgment and a writ of mandate from the superior court. He requested that the court find section 112 unconstitutional on its face, that it set aside the 10-day suspension and enter a new decision based upon the Board's determination of an appropriate penalty, and that it restore to him all backpay and other benefits to which he might be entitled following the Board's redetermination of his penalty. The court (Warren Deering, J., presiding) granted the writ on October 14, 1986, but subsequently refused to issue it until a judgment was entered on all causes of action. A summary judgment motion was then pursued, and the court (Kurt Lewin, J., presiding) declared section 112 unconstitutional, reasoning that the power of the top departmental official to override the Board on employee discipline matters amounted to a denial of due process as to all

city employees. The court also ordered that the writ of mandate be issued. Defendants appealed from this judgment. Finally, the matter was returned to Judge Deering, who signed plaintiff's mandamus order on July 2, 1987.

b. *The Burrell Case*

Burrell had been employed by the city for five years as a rehabilitation construction specialist when, in 1986, he was charged with violating his employment contract by engaging in activities which constituted a conflict of interest. The official having the power of appointment in Burrell's department, Douglas Ford, ordered that Burrell's employment with the city be terminated. Burrell appealed this decision to the Board. Unlike Godino, Burrell did not have a hearing before a Board examiner nor did the Board make a determination in the matter. Instead, Burrell immediately sought a writ of mandate in the superior court, alleging that the Board had suspended review of pending disciplinary appeals because its hearing procedure was constitutionally defective in light of the decision in the Godino matter. Burrell asked the court to reinstate his employment until the city adopted adjudicatory procedures which would afford him a full due process hearing on the issue of the charges against him and the penalty ordered by the departmental official. Burrell based his petition on Judge Deering's statement of decision in the Godino case.

In opposition, the city argued that Burrell had not exhausted his administrative remedies because the Board had not yet acted upon his appeal from Ford's decision to discharge him. The city also argued in favor of the constitutionality of section 112. The trial court (Jerry Fields, J., presiding) disagreed. After taking judicial notice of Judge Deering's decision in the Godino case, the court arrived at substantially the same conclusion. Namely, it concluded that section 112, as drafted, violated state and federal due process rights. The court also found that the charter provision's requirement that the Board obtain the consent of the departmental authority in order to reduce a disciplinary penalty was severable from the rest of section 112. Accordingly, it ordered the Board to conduct a hearing in the Burrell matter pursuant to section 112 without giving effect to that section's consent language. The court also ordered that the city give Burrell backpay and benefits retroactive to the date of his discharge.[1]

The city appealed the judgments in favor of respondents in both cases. Burrell cross-appealed, seeking backpay.

---

[1] The city represents in its reply brief that Burrell went through the administrative appeal process after the judicial appeal was filed in this case. The Board, following a full hearing, sustained the charges against Burrell and recommended a six-month suspension. The department officials in Burrell's department consented to this recommendation and reduced Burrell's discipline to a six-month suspension.

DISCUSSION

1. *Due Process*

The Fifth and Fourteenth Amendments to the United States Constitution and article I, sections 7 and 15 of the California Constitution guarantee that no one may be deprived of his property without due process of law. ■ When the government has conferred upon a person a legally enforceable right or entitlement to a government benefit, such as an interest in continued employment by the government absent sufficient cause for termination, this right constitutes a property interest protected by due process principles. (*Perry* v. *Sindermann* (1972) 408 U.S. 593, 602-603 [33 L.Ed.2d 570, 580-581, 92 S.Ct. 2694]; *Board of Regents* v. *Roth* (1972) 408 U.S. 564, 576-578 [33 L.Ed.2d 548, 560-561, 92 S.Ct. 2701]; *Skelly* v. *State Personnel Bd.* (1975) 15 Cal.3d 194, 206-207 [124 Cal.Rptr. 14, 539 P.2d 774].)

Appellants readily concede that Godino and Burrell possessed property rights in their continued employment by the city because section 112 of the city charter expressly states that permanent employees may not be suspended or discharged except for written cause.[2] Accepting the concession that

---

[2] Section 112 provides: "(a) Any board or officer having the power of appointment of officers, members and employees in any department of the government of the city shall have the power to remove, discharge or suspend any officer, member or employee of such department; but no person in the classified civil service of the city, other than an unskilled laborer employed by the day, shall be removed, discharged or suspended except for cause, which shall be stated in writing by the board or officer having the power to make such removal, discharge or suspension, and filed with the Board of Civil Service Commissioners, with certification that a copy of such statement has been served upon the person so removed, discharged or suspended, personally, or by leaving a copy thereof at his last known place of residence if he cannot be found. Upon such filing such removal, discharge or suspension shall take effect. Within fifteen days after such statement shall have been filed, the said board, upon its own motion, may, or upon written application of the person so removed, discharged or suspended, filed with said board within five days after service upon him of such statement, shall proceed to investigate the grounds for such removal, discharge or suspension. If after such investigation said board finds, in writing, that the grounds stated for such removal, discharge or suspension were insufficient or were not sustained, and also finds in writing that the person removed, discharged or suspended is a fit and suitable person to fill the position from which he was removed, discharged or suspended, said board shall order said person so removed, discharged or suspended to be reinstated or restored to duty. *The board with the consent of the appointing authority may also order a reduction in the length of the suspension, or substitution of a suspension for a removal or discharge, if the board finds, in writing that such action is warranted.* The order of said board with respect to such removal, discharge or suspension shall be forthwith certified to the appointing board or officer, and shall be final and conclusive; provided, that the order of any appointing board or officer suspending any person because of lack of funds in such department shall be final, and shall not be subject to review by said Board of Civil Service Commissioners. If the Board of Civil Service Commissioners shall order that any person removed, discharged or suspended under the provisions of this

the due process clause applies to these employees, the question remains whether the particular procedures mandated by section 112 satisfy the constitutional guaranty of a full and fair disciplinary hearing. Respondents contend that section 112, as presently drafted, unfairly deprives them of their property inasmuch as it fails to afford them all the process which they believe is constitutionally "due."

### a. *Analysis of Federal Law*

The Supreme Court has stated that due process is the opportunity to be heard at a meaningful time and in a meaningful manner. (*Parratt* v. *Taylor* (1981) 451 U.S. 527, 540 [68 L.Ed.2d 420, 432, 101 S.Ct. 1908], overruled on other grounds *Daniels* v. *Williams* (1986) 474 U.S. 327, 330-331 [88 L.Ed.2d 662, 667-668, 106 S.Ct. 662].)[3] It is a flexible concept requiring accommodation of the competing interests involved, and its procedural requisites necessarily vary depending on the importance of the interests involved and the nature of the controversy. (*Cleveland Board of Education* v. *Loudermill, supra,* 470 U.S. 532, 542-543 [84 L.Ed.2d at p. 504]; *Mathews* v. *Eldridge* (1976) 424 U.S. 319, 335 [47 L.Ed.2d 18, 33-34, 96 S.Ct. 893]; *Board of Regents* v. *Roth, supra,* 408 U.S. at p. 570, fn. 8 [33 L.Ed.2d at p. 557].) Although the state (or one of its subdivisions) has the prerogative to create a property interest in an entitlement in the first instance, it does not have the prerogative to diminish the minimum procedural guarantees of the Constitution once the property interests it created have attached. In other words, state and local governments cannot mandate which procedures they unilaterally deem

---

section be reinstated or restored as above provided, the person so removed, discharged or suspended shall be entitled to receive compensation from the city the same as if he had not been removed, discharged or suspended by the appointing board or officer.

"(b) The provisions of this section shall not apply to those members of the Police Department appointed under civil service rules and regulations and sworn in, as provided by law, to perform the duties of regular police officers, nor to those members of the Fire Department appointed under civil service rules and regulations to perform the duties of regular firemen; notwithstanding anything contained in sections 135 and 202 of this charter, all other employees of both departments shall be subject to the provisions of this section.

"(c) The provisions of subsection (a) hereof shall not apply to any suspension of five working days or less in any twelve-month period for personal delinquency. The reasons stated in writing for any such suspension shall be furnished to the suspended employee and promptly filed with the board. Any such suspension which results in an employee having a total suspended time by reason of the exercise of authority under this subsection in excess of five working days in any twelve-month period shall be subject to all of the provisions of subsection (a) hereof." (Italics of contested provision added.)

[3] Respondents have not questioned the timing of the hearings held in their cases. Due process generally requires that an individual be given an opportunity for a hearing *before* being deprived of any significant property interest. (*Cleveland Board of Education* v. *Loudermill* (1985) 470 U.S. 532, 542-544 [84 L.Ed.2d 494, 503-505, 105 S.Ct. 1487]; *Dwyer* v. *Regan* (2d Cir. 1985) 777 F.2d 825, 831-834, as mod. 793 F.2d 457.)

adequate to protect an individual's due process rights; the minimum requisite procedures are *federally* mandated. (*Cleveland Board of Education* v. *Loudermill, supra,* 470 U.S. at p. 541 [84 L.Ed.2d at p. 503].)

██ At a minimum, an individual entitled to procedural due process should be accorded: written notice of the grounds for the disciplinary measures; disclosure of the evidence supporting the disciplinary grounds; the right to present witnesses and to confront adverse witnesses; the right to be represented by counsel; a fair and impartial decisionmaker; and a written statement from the fact finder listing the evidence relied upon and the reasons for the determination made. (*Goldberg* v. *Kelly* (1970) 397 U.S. 254, 267-270 [25 L.Ed.2d 287, 298-300, 90 S.Ct. 1011]; *Morrissey* v. *Brewer* (1972) 408 U.S. 471, 489 [33 L.Ed.2d 484, 499, 92 S.Ct. 2593]; *Withrow* v. *Larkin* (1975) 421 U.S. 35, 46-47 [43 L.Ed.2d 712, 723, 95 S.Ct. 1456]. See *Serafin* v. *City of Lexington, Neb.* (D.Neb. 1982) 547 F.Supp. 1118, 1125 for detailed discussion of the elements of due process.) Of these elements of due process, respondents have singled out only one—the right to a fair and impartial decisionmaker—as being violated by section 112.

██ The right to a fair trial by a fair tribunal is a basic requirement of due process applying to administrative agencies which adjudicate, as well as to courts. (*Withrow* v. *Larkin, supra,* 421 U.S. 35, 46 [43 L.Ed.2d 712, 723].) ██ Respondents contend that their right to a fair tribunal—and the right of all permanent city employees—is violated by the provision in section 112 which prevents the Board from reducing the discipline imposed by the disciplined employee's department manager unless the manager's consent is obtained first. Respondents and the trial courts find this procedure constitutionally objectionable because it, in essence, permits the same official who instituted and investigated the disciplinary proceedings, and recommended a particular penalty, to have the final say on the severity of the penalty which is ultimately imposed.

The trial judges and respondents in this case have relied on language contained in the Supreme Court's opinion in *In re Murchison* (1955) 349 U.S. 133, 136 [99 L.Ed. 942, 946, 75 S.Ct. 623], stating that our legal system endeavors to prevent even the probability of unfairness. The courts in the instant cases found that there was a high probability of unfairness in section 112's consent requirement. In the *Murchison* case, a state judge was empowered by state law to compel witnesses to testify before him in secret about possible crimes. The judge in question charged two such witnesses with criminal contempt, then tried and convicted them himself. Unsurprisingly, the Supreme Court found a high probability of unfairness and a due process violation in this procedure because it allowed the judge to act as prosecutor and assume an adversary position, and also because the judge's impartiality

would be tainted by personal knowledge obtained in the earlier, clandestine proceedings. (*Id.* at p. 138 [99 L.Ed. at p. 947].)

The Supreme Court has, however, distinguished the due process required in an administrative hearing from that required in a judicial proceeding. The court has written, "Plainly enough, *Murchison* has not been understood to stand for the broad rule that the members of an administrative agency may not investigate the facts, institute proceedings, and then make the necessary adjudications." (*Withrow* v. *Larkin, supra,* 421 U.S. at p. 53 [43 L.Ed.2d at p. 727].) The court observed that it is "very typical for the members of administrative agencies to receive the results of investigations, to approve the filing of charges or formal complaints instituting enforcement proceedings, and then to participate in the ensuing hearings. This mode of procedure does not violate . . . due process of law. We should also remember that it is not contrary to due process to allow judges and administrators who have had their initial decisions reversed on appeal to confront and decide the same questions a second time around." (*Id.* at pp. 56-57 [43 L.Ed.2d at p. 729].) The court was not troubled that the same administrative body which investigated Larkin also issued formal findings against him, because "[t]he risk of bias or prejudgment in this sequence of functions has not been considered to be intolerably high or to raise a sufficiently great possibility that the adjudicators would be so psychologically wedded to their complaints that they would consciously or unconsciously avoid the appearance of having erred or changed position." (*Id.* at p. 57 [43 L.Ed.2d at p. 729].) The court did not, however, decide the constitutionality of allowing a decisionmaker to review and evaluate his own prior decisions. (*Id.* at p. 58, fn. 25 [43 L.Ed.2d at p. 730].)

The next Supreme Court case to address the impartiality of an administrative decisionmaker was *Hortonville Dist.* v. *Hortonville Ed. Assn.* (1976) 426 U.S. 482 [49 L.Ed.2d 1, 96 S.Ct. 2308]. In the *Hortonville* case, a number of striking public school teachers were fired by the same administrative body—the local school board—which had been involved in the negotiations preceding and precipitating the strike. The Supreme Court held that this pretermination involvement by the board, without more, did not infect its ability to serve as an impartial decisionmaker in terminating the teachers. ██ Said the court, "[m]ere familiarity with the facts of a case gained by an agency in the performance of its statutory role does not . . . disqualify a decisionmaker. *Withrow* v. *Larkin,* 421 U.S. 35, 47 (1975); *FTC* v. *Cement Institute,* 333 U.S. 683, 700-703 (1948). Nor is a decisionmaker disqualified simply because he has taken a position, even in public, on a policy issue related to the dispute, in the absence of a showing that he is not 'capable of judging a particular controversy fairly on the basis of its own circumstances.' *United States* v. *Morgan,* 313 U.S. 409, 421 (1941)." (426

U.S. at p. 493 [49 L.Ed.2d at p. 9].) The court suggested that bias and inability to judge fairly might be demonstrated if the decisionmaker is shown to have a personal or financial stake in the outcome of the decision, or shows animosity toward the employee. (*Id*. at pp. 492, 497 [49 L.Ed.2d at pp. 9, 11-12].) These predilections on the part of a decisionmaker must be shown to overcome the presumption of honesty and integrity in policymakers with decisionmaking power. (*Ibid*.)

An objectionable personal and financial stake in the outcome of a case was demonstrated in *Aetna Life Insurance Co.* v. *Lavoie* (1986) 475 U.S. 813 [89 L.Ed.2d 823, 106 S.Ct. 1580], in which a justice of the Alabama Supreme Court failed to recuse himself from an appeal brought by an insurer at a time when the justice himself was suing another insurer on similar grounds. He cast the deciding vote in the appeal and authored an opinion which soon resulted in his receipt of a "tidy sum" in his own lawsuit. The Supreme Court concluded that this conduct amounted to a violation of appellant's constitutional rights because the judge in question was not impartial.

Applying these Supreme Court decisions to facts more analogous to the ones before us in this appeal, the lower and intermediate federal courts have concluded that the right to a fair and impartial tribunal is not violated by permitting the official who makes the initial disciplinary decision to have the final say in the matter.

The case of *Brasslett* v. *Cota* (1st Cir. 1985) 761 F.2d 827 illustrates this conclusion. Brasslett, a municipal fire chief, was discharged by Cota, the town manager, after Cota investigated Brasslett's conduct. Under established grievance procedures, disciplined employees had the right to seek review of the action by a personnel appeals board. After hearing the appeal, the board recommended that Brasslett be reinstated and that Cota consider more lenient disciplinary alternatives. Cota's decision not to follow the recommendation was discretionary and final under the grievance rules. Brasslett contended that "because the recommendation of the Appeals Board was merely advisory, the evidentiary hearing on which it was based is a nullity. Consequently he argues that the fact that the ultimate decision rests with the Manager who made the initial personnel decision, renders the hearing procedurally deficient for lack of an impartial decisionmaker." (761 F.2d at pp. 836-837.) The circuit court of appeals rejected the contention, reasoning that the rendering of an advisory opinion to an ultimate decisionmaker does not make the entire hearing process nugatory. The critical question, the court found, was whether Cota, the ultimate decisionmaker, was impartial. Absent a showing of bias by Cota—either personal animosity

or financial interest in the outcome of the decision—Brasslett could not complain that his due process rights were violated. (*Id.* at p. 837.)

A similar conclusion was reached in *Nevels* v. *Hanlon* (8th Cir. 1981) 656 F.2d 372, in which a state employee was terminated by a deputy commissioner of his department for a number of different reasons. Nevels appealed this decision to a personnel appeal board, which found that some of the alleged misconduct was true, but nonetheless believed that dismissal was not warranted. The commissioner rejected the appeal board's recommendation and finalized Nevels's dismissal. Nevels argued that his due process rights were violated because the commissioner was "predisposed to uphold his original decision and is, therefore, not an impartial decisionmaker." (656 F.2d at p. 376.) The court of appeals disagreed, finding no due process violation.

Echoing this conclusion, which is derived from the Supreme Court's statements in *Withrow*, other federal courts have reiterated the presumption that government officials can and will decide particular controversies conscientiously and fairly despite earlier involvement in them. These decisions include *Boston* v. *Webb* (4th Cir. 1986) 783 F.2d 1163, 1166 (court approves procedure permitting administrator who instituted the investigation of a city policeman to make the ultimate disciplinary decision in the matter); *DeSarno* v. *Department of Commerce* (Fed. Cir. 1985) 761 F.2d 657, 660 (supervisor who proposes termination of an employee is permitted to conduct full, impartial review of the matter and to make the final decision so long as the employee receives notice of the charges, an explanation of the employer's evidence and an opportunity to present his side of the story); *Frumkin* v. *Board of Trustees, Kent State* (6th Cir. 1980) 626 F.2d 19, 21-22 (no due process violation in having a university president, who had decided to dismiss a tenured professor, override the recommendation of a hearing committee not to terminate the professor's employment); and *Beard* v. *General Services Admin.* (Fed. Cir. 1986) 801 F.2d 1318, 1323 (there is no constitutional requirement that an administrative panel reviewing agency disciplinary actions must independently select a penalty it feels is appropriate for the misconduct charged).

■ The cited federal decisions support the distinction between the due process required in a judicial proceeding and that required in an administrative hearing. This is a distinction which applies in the instant case. The proceeding involved here is an administrative and not a judicial proceeding, and the relevant federal decisions we have cited do not support respondents' contention that a panel reviewing a departmental disciplinary decision must be able to override the department's selection of what it believes is an appropriate penalty.

What *is* owing to the disciplined employee is the right to have the reviewing body determine whether there is sufficient evidence to uphold the charges of misconduct. Section 112 provides for this type of review. Section 112 also permits the board reviewing the matter to render what amounts to an advisory opinion regarding imposition of a penalty, once it has determined that there is sufficient evidence to support the grounds for taking disciplinary action. That the reviewing body cannot force its notion of what is an appropriate penalty on the agency does not, without more, offend the federal Constitution. The Constitution is offended, according to the Supreme Court, by an ultimate decisionmaker who exhibits personal animosity toward the employee or who is financially interested in the outcome of the proceedings. In this appeal, there is no evidence, nor even argument, suggesting that the decisionmaker who ultimately decided the appropriate penalty was in any way biased or improperly interested. Respondents are thus left to argue that the agency officials involved in the decisionmaking process *might* be wedded to their original conclusions, or that the entire process *appears to be* unfair. These speculations are not sufficient to overcome the presumption that public officials will act fairly and conscientiously in discharging their duties.

Our analysis of the relevant federal authorities leads us to conclude that the requirement contained in section 112 of the Los Angeles City Charter that the Board obtain the consent of a disciplined employee's departmental chief before reducing the level of the employee's punishment does not violate the minimum due process guaranties of the federal Constitution.

b. *Analysis of State Law*

Though the wording of the California Constitution parallels in part that contained in the federal Constitution, the rights guaranteed by the state's Constitution are not dependent on those guaranteed by the United States Constitution (Cal. Const., art. I, § 24). ■ The scope of rights secured to the people of California by their Constitution are to be determined by the state courts, "informed but untrammelled by the United States Supreme Court's reading of parallel federal provisions." (*Reynolds* v. *Superior Court* (1974) 12 Cal.3d 834, 842 [117 Cal.Rptr. 437, 528 P.2d 45].)

Our Supreme Court has said that procedural due process in an administrative setting requires notice of the proposed action; the reasons therefor; a copy of the charges and materials on which the action is based; and the right to respond to the authority initially imposing the discipline "before a reasonably impartial, noninvolved reviewer." (*Williams* v. *County of Los Angeles* (1978) 22 Cal.3d 731, 736-737 [150 Cal.Rptr. 475, 586 P.2d 956].) The court has found that allowing a single decisionmaker to undertake both

the investigative and the adjudicative functions in an administrative proceeding does not, by itself, constitute a denial of due process. (*Griggs* v. *Board of Trustees* (1964) 61 Cal.2d 93, 98 [37 Cal.Rptr. 194, 389 P.2d 722].)

Rather, as in the federal courts, our Supreme Court requires a party seeking to show bias or prejudice on the part of an administrative decisionmaker to prove the same with concrete facts: " 'Bias and prejudice are never implied and must be established by clear averments.' [Citation.] Indeed, a party's unilateral perception of an appearance of bias cannot be a ground for disqualification unless we are ready to tolerate a system in which disgruntled or dilatory litigants can wreak havoc with the orderly administration of dispute-resolving tribunals." (*Andrews* v. *Agricultural Labor Relations Bd.* (1981) 28 Cal.3d 781, 792 [171 Cal.Rptr. 590, 623 P.2d 151]; accord *Gill* v. *Mercy Hospital* (1988) 199 Cal.App.3d 889, 910-911 [245 Cal.Rptr. 304]; *American Isuzu Motors, Inc.* v. *New Motor Vehicle Bd.* (1986) 186 Cal.App.3d 464, 472-473 [230 Cal.Rptr. 769].) The court added, "[O]ur courts have never required the disqualification of a judge unless the moving party has been able to demonstrate concretely the actual existence of bias. We cannot now exchange this established principle for one as vague, unmanageable and laden with potential mischief as an 'appearance of bias' standard, despite our deep concern for the objective and impartial discharge of all judicial duties in this state. [¶] The foregoing considerations, of course, are equally applicable to the disqualification of a judicial officer in the administrative system. Indeed, the appearance of bias standard may be particularly untenable in certain administrative settings." (*Andrews* v. *Agricultural Labor Relations Bd., supra,* 28 Cal.3d at pp. 793-794.) In a footnote, the court observed that there were some situations in which a decisionmaker should be disqualified because of the "probability" of bias, such as when he has a personal or financial interest in the outcome, or is either familially or professionally related to the litigant. (*Id.* at p. 793, fn. 5.)

■■■ Thus, it appears that the highest court of this state construes the state Constitution's due process guaranty of a fair and impartial administrative decisionmaker in the same manner as the federal courts have interpreted parallel provisions in the federal Constitution. In other words, mere involvement in ongoing disciplinary proceedings does not, per se, violate due process principles. Those principles are violated, conversely, if the official or officials who take part in the proceedings are demonstrably biased or if, in the least, circumstances such as personal or financial interest strongly suggest a lack of impartiality. Our Supreme Court has emphatically rejected the notion that a subjective "appearance of bias" is enough to taint an entire legislatively created system of handling disciplinary matters.

The California intermediate appellate decisions relied upon by respondents are distinguishable. In *Applebaum* v. *Board of Directors* (1980) 104

Cal.App.3d 648 [163 Cal.Rptr. 831], the court found a lack of procedural fairness where nearly one-half of the members of the panel reviewing a decision to suspend a physician's staff privileges were also members of the committee which had made the original suspension decision. That is not the case here: there is nothing in the record suggesting that there is an overlap between the departmental officials responsible for Godino's and Burrell's punishment and the members of the Board which reviews the sufficiency of the grounds for the discipline imposed by the departmental officials. In *American Motors Sales Corp.* v. *New Motor Vehicle Bd.* (1977) 69 Cal.App.3d 983 [138 Cal.Rptr. 594], the court arrived at the "unavoidable" conclusion that "dealer-members of the Board have an economic stake in every franchise termination case that comes before them." (*Id.* at p. 987.) The court reached the same conclusion in *Nissan Motor Corp.* v. *New Motor Vehicle Bd.* (1984) 153 Cal.App.3d 109 [202 Cal.Rptr. 1]. Respondents have offered no such evidence of a financial interest by either the departmental officials or the Board in the outcomes of the disciplinary proceedings at issue here.

A number of the cases relied upon by the trial courts are likewise inapposite. In *International Brotherhood of Electrical Workers* v. *City of Gridley* (1983) 34 Cal.3d 191 [193 Cal.Rptr. 518, 666 P.2d 960], the disciplined city employees were dismissed "summarily without any predismissal procedures." (*Id.* at p. 196.) The Supreme Court found that this was improper, because the terminated employees had a property interest in their continued employment, which required, in the least, some sort of hearing to determine the nature and extent of the appropriate disciplinary action. (*Id.* at p. 208.) Here, by contrast, neither Godino nor Burrell was "summarily" dismissed or suspended. Indeed, the transcript from the Godino matter indicates that Godino was given a hearing and an opportunity to refute the charges before a *"Skelly* hearing committee" within his department.[4] It was that committee's decision which led to his appeal to the Board.

The case of *Mennig* v. *City Council* (1978) 86 Cal.App.3d 341 [150 Cal.Rptr. 207] contains facts somewhat similar to our own, but is distinguishable on several grounds. In *Mennig,* a city procedural rule permitted disciplined employees to appeal their punishment to a municipal civil service commission. The commission could make recommendations which could be overruled by a unanimous vote of the city council. A local police chief, Mennig, became embroiled in a political dispute with the city council, which then voted to dismiss him. Mennig appealed to the municipal civil service commission, which found that none of the charges against him were

---

[4] Referring to *Skelly* v. *State Personnel Bd., supra,* 15 Cal.3d 194, giving permanent public employees the right to a pretermination hearing.

supported by substantial evidence and recommended that he be reinstated. The city council disapproved of the commission's findings and refused to reinstate Mennig, prompting him to seek a writ of mandate. In the Court of Appeal, Division One of this District acknowledged that an administrator's prior knowledge of the facts bearing upon his decision, or even his prehearing expression of opinion on the result does not, of itself, disqualify him from acting on a matter. (86 Cal.App.3d at p. 350.) Citing *Withrow* v. *Larkin, supra,* 421 U.S. 35, the court found that, on the other hand, the administrative decisionmaker in the case before it—the city council—should be disqualified because its members were "personally embroiled in the controversy with Mennig" and "if not fighting for their collective political lives, were nevertheless impelled to seek vindication. They in fact did so in their resolution increasing the penalty against Mennig by recording as true facts to which they had testified [those] which the commission had found to be unsubstantiated." (86 Cal.App.3d at p. 351.)

There are thus at least two distinguishing factors in *Mennig*: first, the administrative appellate panel found that the charges against Mennig were unsubstantiated, and second, the ultimate decisionmaker was obviously biased with personal animosity toward the disciplined employee. Neither of those factors is present in our case. We note that the court in *Mennig* was not troubled by the city's system per se, even though that system permitted the city council which had originally dismissed the employee to make the ultimate decision overruling the civil service commission's findings and recommendations. What troubled the court was the ultimate decisionmaker's demonstrable bias, which is constitutionally unacceptable.

██ The trial courts in this consolidated appeal, though undoubtedly well-intentioned, should not have invalidated a system approved by the electorate merely because they believe city employees should be given more procedural process than they are constitutionally due. The record reflects that the trial judges here misperceived the purpose of the administrative appeal. The purpose of the administrative appeal is to ensure that an employee has not been disciplined by his department supervisors for trivial or invidious reasons. The Board accomplishes this task by independently reviewing the sufficiency of the evidence supporting the charges against the employee. If it finds an inadequate basis for the charges, and that the employee is fit to fill his position, the Board is *required* by section 112 to reinstate the disciplined employee. The only limitation on the Board's powers occurs after it has already determined that the charges against the employee are substantiated. At that point, the local electorate has decided that the department itself may be better equipped than the Board to determine an appropriate penalty, presumably consistent with the penalties it has imposed in the past for similar misconduct in countless other cases. (See

*Beard* v. *General Services Admin., supra,* 801 F.2d 1318, 1321-1322.) This procedure should not be invalidated because there could possibly be some undocumented and unproved bias in the ultimate decisionmaker. The Supreme Courts of the United States and this state require more than this as a reason for declaring charter provisions unconstitutional on due process grounds.

## 2. *Equal Protection*

 Respondents contend that the city provides what they consider to be "more protection" to sworn firemen and police officers because charter sections 135 and 202 (unlike section 112, subdivision (a)) prevent police and fire department managers from imposing a greater disciplinary penalty than that recommended by the board of rights to which disciplinary decisions are appealed.[5] This leads respondents to conclude that the treatment given to policemen and firemen, because it differs from the treatment afforded to all other civil service employees, amounts to a denial of equal protection. Judge Deering rejected this contention, and so do we.

Respondents erroneously announce that the city's differing treatment of policemen and firemen is subject to strict scrutiny and can only be justified by a compelling government interest because a "fundamental right to due process" is implicated. Our Supreme Court has considered and rejected a similar contention, observing that it "appears to rest upon an assumption that whenever a 'property' or 'liberty' interest is accorded the protections of procedural due process, that interest becomes a 'fundamental constitutional right' so that legislative measures regulating such an interest are necessarily subject to strict scrutiny. This assumption is totally unfounded. Recent decisions have established that the whole panoply of ordinary property rights are generally protected from summary termination or deprivation by procedural due process [citations] but no case has even remotely suggested that the constitutionality of substantive legislative measures regulating or restricting such 'protected property' rights are to judged under a 'strict scrutiny standard.'" (*Hernandez* v. *Department of Motor Vehicles* (1981) 30 Cal.3d 70, 81 [177 Cal.Rptr. 566, 634 P.2d 917].) Rather, we must presume that the legislation creating the classification is constitution-

---

[5]Much like section 112, section 135 provides that officers and employees of the fire department may only be disciplined "for good and sufficient cause" after a full hearing before a board of rights. The board of rights is comprised of three high ranking fire department chiefs, none of whom are permitted to sit if they were material witnesses to the misconduct charged. Section 202 is virtually identical to section 135, except that it applies to the police department. Section 112, subdivision (b) states that the procedures prescribed by section 112, subdivision (a), which we have discussed at length above, apply to all police and fire department employees except those who are sworn to perform the duties of regular police officers and firemen.

al, and determine only whether the distinctions drawn bear some rational relationship to a conceivable legitimate state purpose. (*D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 16 [112 Cal.Rptr. 786, 520 P.2d 10].) In other words, the classification must be found to rest upon "some reasonable differentiation fairly related to the object of regulation." (*Hays* v. *Wood* (1979) 25 Cal.3d 772, 787 [160 Cal.Rptr. 102, 603 P.2d 19].)[6]

■■■■ Although the city has not deigned to provide us with one, we can nonetheless conceive of a legitimate government purpose for the distinction between firemen and policemen and other municipal civil service employees. Unlike most other Los Angeles civil service employees, policemen and firemen are responsible for ensuring the physical safety of the city's citizenry. This responsibility not only embodies a far higher level of public trust, but also requires these officers to make split-second life-and-death decisions in the course and scope of their employment. Thus, they are obliged to function more independently than, for example, an employee of the department of parks and recreation or municipal construction worker, with far less direct supervision. These factors make it imperative for a peace officer or fireman to have alleged misconduct in the line of duty reviewed by officers within his department rather than by an outside administrative review panel whose members would be unfamiliar with the dangers inherent in this type of work.

It is equally reasonable to have this internal review panel set a limit on the penalty which may be imposed by the officer's supervisor (without first obtaining the supervisor's consent): we can conceive of a situation in which a supervisor determines that a fireman should be terminated for refusing to enter a burning building, a determination which is repudiated by members of a reviewing panel who have faced similar circumstances and who believe that the fireman's conduct did not merit such a harsh penalty. The difference between this scenario and that faced by Godino, for example, is that Godino was not confronted with the prospect of losing his life when he decided not to follow departmental money handling procedures. The determination of whether a policeman or fireman acted properly is, in other words, a far more subjective determination than most; therefore it is reasonable and rational that the uppermost penalties for these individuals should be decided by the reviewing panel.

---

[6]The case relied upon by respondents, *Long Beach City Employees Assn.* v. *City of Long Beach* (1986) 41 Cal.3d 937 [227 Cal.Rptr. 90, 719 P.2d 660], is inapposite. There, the court applied a strict scrutiny analysis because a public employee's fundamental right to privacy was impinged by the defendant's polygraph test requirement. No privacy right is implicated by the legislative classification in this appeal.

In sum, we find that there is a legitimate government purpose for providing a separate administrative review procedure for regular police officers and members of the fire department, and that this distinction does not violate the equal protection rights of other civil service employees.

### DISPOSITION

The judgments of the trial courts in these cases declaring Los Angeles City Charter section 112 unconstitutional are reversed. Burrell's "cross-appeal" seeking backpay during the pendency of this appeal is not properly before this court as it concerns a matter not decided by the trial court. Each party to bear its own costs on appeal.

Lucas, P. J., and Kennard, J.,* concurred.

Appellant's petition for review by the Supreme Court was denied July 20, 1989. Kennard, J., did not participate therein. Mosk, J., was of the opinion that the petition should be granted.

---

* Assigned by the Chairperson of the Judicial Council.