81 Cal.Rptr.2d 900 (1999)
69 Cal.App.4th 1017
Theodore L. HAAS, Plaintiff and Respondent,
v.
COUNTY OF SAN BERNARDINO et al., Defendants and Appellants.
No. E022209.
Court of Appeal, Fourth District, Division Two.
February 4, 1999.
Review Granted April 28, 1999.
*901 Alan K. Marks, County Counsel (San Bernardino), and Alan L. Green, Deputy County Counsel, for Defendants and Appellants.
Roger Jon Diamond, Santa Monica, for Plaintiff and Respondent.

OPINION
GAUT, J.

1. Introduction

The Board of Supervisors of County of San Bernardino and the County of San Bernardino (referred to collectively as the County) appeal from the judgment of the superior court granting a peremptory writ of mandamus in favor of Theodore L. Haas (Haas). The writ set aside the County's revocation of Haas's massage clinic license on the grounds the County's unilateral selection, retention, and payment of the hearing officer violated Haas's due process rights to a fair hearing conducted by an impartial hearing officer.
The County contends that the trial court erred in issuing the writ of mandamus because selection of the hearing officer was in compliance with County Code hearing officer selection procedures, and there was no direct evidence the hearing officer was biased. We conclude the County Code, in effect, permitted unrestricted choice of hearing officers. Even though the County's selection of the hearing officer was in conformity with the County Code, we nevertheless conclude the manner of selection of the hearing officer violated Haas's due process right to an impartial hearing officer. A showing of actual bias was not required because a reasonable person would doubt the hearing officer's impartiality. Accordingly, we affirm the judgment below.

2. Procedural and Factual Background

Haas operated a massage clinic in an unincorporated area of the County of San Bernardino. On August 2, 1994, the County Clerk of the Board of Supervisors (Clerk) denied renewal of Haas's license on the ground an employee at Haas's massage clinic had solicited acts of prostitution, which constituted grounds for revoking or denying renewal of a massage clinic license under the County Code provisions regulating massage clinics. (San Bernardino County Code, ch. 19, §§ 41.1917, 41.1919, & 41.1920.)
Haas appealed revocation of his license. Following an administrative appeal, the County confirmed revocation of his license. Haas filed a petition in the superior court 902"/> seeking a writ of administrative mandamus to set aside revocation of his license. Due to the loss of the tape recordings of the administrative hearing, the superior court granted Haas's writ petition on the ground an incomplete record prevented the court from ruling on the merits of Haas's appeal. The court ordered Haas's license reinstated, without prejudice to the County renewing revocation proceedings against Haas.
In accordance with the trial court's order, the Clerk served Haas with a new massage clinic license, along with a notice of revocation of the license. Haas appealed revocation of his license and requested an administrative hearing on his appeal. Hearing officer Abby Hyman (Hyman) conducted the second administrative appeal hearing which is the subject of the instant case. She did not hear the first administrative appeal. The attorney representing the County unilaterally selected and personally retained Hyman. The County paid her fees for serving as the hearing officer. The County's attorney rejected Haas's request to select and pay the hearing officer.
At the administrative hearing, Haas's attorney requested Hyman to recuse herself on the grounds the County's hiring of Hyman created a conflict of interest in violation of Haas's due process rights to an impartial hearing officer. Hyman answered several of Haas's attorney's questions regarding her retention, her legal background, and the County's payment of her fees. The County's attorney also explained his method of selection and retention of Hyman, and provided information regarding the County's payment of Hyman's fees. Hyman then denied Haas's recusal request and proceeded with the administrative hearing. In Hyman's statement of decision, she found that the conduct of Haas's employee violated the County Code massage clinic regulations and accordingly recommended revocation of Haas's massage clinic license. Consistent with Hyman's findings and recommendations, the County revoked Haas's license. As a consequence, Haas was barred from obtaining another license for ten years.
Haas once again filed a petition seeking a peremptory writ of mandamus to set aside revocation of his license. The trial court granted Haas's petition on the ground the procedure the County employed in selecting Hyman as the hearing officer violated Haas's constitutional due process rights and did not comply with the County Code mandated procedures for selecting hearing officers.

3. Due Process Rights to a Fair Hearing

The issue before us is whether the County's unilateral selection, retention and payment of the hearing officer deprived Haas of a fair hearing by an impartial hearing officer in violation of his due process rights.[1] This is a question of law which we review de novo. (Clark v. City of Hermosa Beach (1996) 48 Cal.App.4th 1152, 1169, 56 Cal. Rptr.2d 223.) The trial court's "`foundational factual findings must be sustained if supported by substantial evidence; however, the ultimate determination of whether the administrative proceedings were fundamentally fair is a question of law to be decided on appeal.'" (Ibid.)
Issuance of a writ of administrative mandamus is proper where an agency has deprived the petitioner of his due process right to a fair hearing. (Clark v. City of Hermosa Beach, supra, 48 Cal.App.4th at p. 1170, 56 Cal.Rptr.2d 223; Code Civ. Proc., § 1094.5, subd. (b).) The California Supreme Court "construes the state Constitution's due process guaranty of a fair and impartial administrative decisionmaker in the same manner as the federal courts have interpreted parallel provisions in the federal Constitution." (Burrell v. City of Los Angeles (1989) 209 Cal.App.3d 568, 582, 257 Cal.Rptr. 427.) Due process rights to a fair tribunal apply to administrative hearings, as well as to court proceedings. (Id., at p. 577, 257 Cal.Rptr. 427.)
Here, standards of due process entitled Haas to oppose revocation of his license, including the right to a fair and impartial decisionmaker. (Linney v. Turpen (1996) 42 Cal.App.4th 763, 770, 49 Cal.Rptr.2d 813; 903"/> Burrell, supra, at p. 577, 257 Cal.Rptr. 427.) "[D]ue process is the opportunity to be heard at a meaningful time and in a meaningful manner" before being deprived of a significant property interest. (Burrell, supra, at p. 576, 257 Cal.Rptr. 427.) However, "[d]ue process does not require a perfectly impartial hearing officer for, indeed, there is no such thing." (Linney, supra, at pp. 770-771, 49 Cal.Rptr.2d 813.) Due process requires only a "'reasonably impartial, noninvolved reviewer.'" (Linney, supra, at p. 771, 49 Cal. Rptr.2d 813.)
In the instant case, Haas asserts that the hearing officer, Hyman, was not an impartial and unbiased hearing officer. At the time of the appeal hearing, Haas's attorney requested Hyman to recuse herself as the hearing officer, and then proceeded to ask Hyman and the County's attorney a series of questions regarding how Hyman was selected and payment of her fee. Hyman stated she was currently employed as an in-house insurance company attorney, the pending matter was the only matter in which she had ever served as a hearing officer for the County; she had never met the County's attorney or Haas before; she had no preconceived ideas about Haas or operators of massage clinics; and she, rather than her employer, would receive the hearing officer's fees paid by the County.
The County's attorney stated in response to Haas' objection to Hyman, that to avoid the potential objection of bias, the Board decided to retain Hyman, rather than the individual who conducted the previous hearing in this matter. Based upon recommendations by other attorneys in County Counsel's Office, the County's attorney called Hyman and retained her to serve as the hearing officer. She was retained solely for the hearing in the pending matter, with the possibility of future retention if the occasion arose. The County might use either Hyman or the other individual used in the past as a hearing officer. There were no fee negotiations. The rate of pay was the same fixed rate County Counsel billed internal clients for attorney time. Hyman was to be paid only for the work she actually performed in connection with the hearing. The County's attorney acknowledged that Haas had offered to hire and pay for the hearing officer and the County rejected the offer; and there was no formal office of county hearing officer.

A. Financial Interest
We first consider whether the County's payment of Hyman for her services as a hearing officer in this matter constituted a violation of Haas's due process right to an impartial hearing officer. Our high court in Andrews v. Agricultural Labor Relations Bd. (1981) 28 Cal.3d 781, 171 Cal.Rptr. 590, 623 P.2d 151, formulated the following twotier test for determining whether disqualification of a hearing officer is required: "The first inquiry consists of deciding whether the moving party has set forth legally sufficient facts to demonstrate the bias of the judicial officer. After that determination, the challenged judicial officer or a reviewing court must still decide whether such bias will render it probable that a fair trial cannot be held before that judge." (Id., at p. 792, 171 Cal. Rptr. 590, 623 P.2d 151.)
In a footnote, the Linney court noted that "due process does not require disqualification of a judicial officer for the `slightest pecuniary interest' [citation] or where the interest is either `speculative and contingent' [citation] or `remote and insubstantial.' [Citation.] It is, however, required where the officer has a `"`direct, personal, substantial, [and] pecuniary"" interest. [Citations.]" (Linney v. Turpen, supra, 42 Cal.App.4th at p. 775, fn. 10, 49 Cal.Rptr.2d 813.)
In Linney, supra, a city airport officer, who was fired, claimed he had been deprived of a fair hearing because the hearing officer was selected and paid by his employer, and thus the hearing officer had a financial interest in deciding the case in favor of the employer. (Linney v. Turpen, supra, 42 Cal. App.4th at p. 769,49 Cal.Rptr.2d 813.)
Although the Linney court of appeal concluded Linney had waived the issue by not timely raising his impartiality objection at the administrative hearing, the Linney court added that, in any event, Linney's due process contention was without merit. (Linney v. Turpen, supra, 42 Cal.App.4th at p. 770, 49 Cal.Rptr.2d 813.) "[N]o facts support a 904"/> claim that respondent hearing officer was biased. He was entitled to the benefit of a presumption that he was ""of conscience and intellectual discipline'"' and judged the case fairly. [Citation.] Nothing indicates he had a personal financial stake in the matter or harbored any animosity toward appellant." (Id., at p. 773, 49 Cal.Rptr.2d 813, fn. omitted.)
Here, also, we conclude there were insufficient facts to establish that the County's payment of Hyman's fee constituted a significant pecuniary interest. Unlike in People ex rel. Clancy v. Superior Court (1985) 39 Cal.3d 740, 218 Cal.Rptr. 24, 705 P.2d 347, the amount of her fee was not contingent upon Hyman deciding the matter in favor of the County. According to the County's attorney's representations at the administrative hearing, Hyman's fee was a fixed, hourly fee, set by the County, which was the equivalent of County Counsel's billing rate for legal services provided to the County's internal clients.
Haas also contends that the possibility of the County retaining Hyman as a hearing officer in the future created a significant pecuniary interest. This contention also lacks merit. Such pecuniary interest is remote, contingent and slight, particularly since the record indicates Hyman had concurrent full-time employment as an attorney in private practice, opportunities to serve as a hearing officer were generally infrequent, and there was no guarantee the County would retain her in the future, particularly since in the past the County had used someone else. We conclude Hyman's alleged pecuniary interest was slight, at best, as well as remote. In and of itself, the County's payment of Hyman's fee did not constitute a violation of Haas's due process right to an impartial hearing officer.

B. Unilateral Selection of Hearing Officer
We next consider whether the County's unilateral selection and retention of Hyman constituted a violation of Haas's due process right to an impartial hearing officer. The County claims that selection of Hyman was in accordance with the hearing officer selection procedures set forth in the County Code.
Government Code section 27720 provides that "The board of supervisors of any county may establish the office of county hearing officer. The duties of the office are to conduct hearings for the county or any board, agency, commission, or committee of the county."
Chapter 27, sections 12.270 through 12.2730, of the County Code (County Code) is entitled "Administrative Hearings; County Hearing Officer." According to County Code section 12.271, "There is in the government of the County of San Bernardino the office of County Hearing Officer. The duties of the office are to conduct hearings for the County...." County Code section 12.272 provides that "When any law, ordinance, rule or regulation provides that a hearing be held or that findings of fact or conclusions of law be made by an agency, a County Hearing Officer may be appointed by the Board of Supervisors to conduct such hearing. The appointment of such a hearing officer is discretionary with the Board of Supervisors...." Alternatively, the County can contract with the California State Office of Administrative Hearings for the services of a state hearing officer. (San Bernardino County Code, ch. 27, § 12.275.)
The County Code further states that the specified methods of selection of a hearing officer are discretionary. County Code section 12.272 states that "Unless made mandatory by another section of this Code, the procedures of this Chapter may be made applicable to a proceeding at the sole discretion of the Board of Supervisors." In other words, unless stated otherwise in the code, the Board had the discretion to disregard the hearing officer selection procedures set forth in chapter 27.
County Code section 41.1922, pertaining to massage clinics, provides that a licensee whose license has been revoked may appeal to the Board and the Board may hear the appeal directly or, in its sole discretion, may appoint a hearing officer to hear an appeal and make a recommendation to the Board pursuant to Chapter 27 of the County Code. We conclude that pursuant to the County Code, the Board could select whomever it 905"/> wished without limitation, and there were thus no procedural mechanisms contained in the County Code ensuring reasonable impartiality of a hearing officer.
We further note that although the County Code provided for a County office of Hearing Officer, such an office did not exist. The County simply retained an attorney to serve as a hearing officer when the need arose. Even though the County's selection of Hyman did not violate the County's Code selection provisions, since the County Code did not provide any restrictions on selection, this does not end the matter. Although the County had the prerogative to codify its own procedures for conducting hearings and selecting hearing officers, it did not have the prerogative to diminish the minimum state and federal constitution procedural guarantees. (Burrell v. City of Los Angeles, supra, 209 Cal.App.3d at pp. 576-577, 257 Cal.Rptr. 427.) "In other words, state and local governments cannot mandate which procedures they unilaterally deem adequate to protect an individual's due process rights; the minimum requisite procedures are federally mandated." (Ibid.)
We thus examine whether the particular method of unilateral selection of the hearing officer in the instant case violated Haas's due process right to an impartial hearing officer. In Linney, supra, the court of appeal concluded the method of selection of the hearing officer did not violate the employee's due process rights because the city did not have an unrestricted choice in selection nor total control of the selection process. (Linney v. Turpen, supra, 42 Cal.App.4th at p. 774, 49 Cal.Rptr.2d 813.) The city selected the hearing officer in accordance with the city charter which required selection pursuant to the rules of the civil service commission. The hearing officer was selected from a civil service commission list. Hearing officers on the list were required to possess certain qualifications and the commission was required to publish the names of the prospective hearing officers to allow city personnel and the public to challenge placement of the prospective hearing officers on the list. The executive officer then reviewed all such challenges and determined whether a challenged individual should be eliminated from the list.
Here, the selection of the hearing officer was entirely controlled by the County and was not subject to any restrictions, other than the Government Code provision requiring a hearing officer to be an attorney licensed with the State Bar for at least five years. (Gov.Code, § 27724; San Bernardino County Code, ch. 27, § 12.273.)
Although the County's method of selection did not violate the County Code provisions, since there essentially were no restrictions or limitations, we conclude the County's unilateral selection and retention of the hearing officer, combined with the County's payment of the hearing officer, constituted an inherent deprivation of Haas's due process right to an impartial hearing officer. The County's attorney not only personally retained Hyman but, in addition, represented the County at the hearing before the very hearing officer he had personally retained. Under the totality of the circumstances in this case, the manner of selection and retention of the hearing officer was inherently unfair and created a reasonable doubt that the hearing officer was impartial.
We recognize that the courts have held as a general rule that disqualification of a hearing officer is required only upon a showing of actual bias (Andrews, supra, at p. 792, 171 Cal.Rptr. 590, 623 P.2d 151, and Linney, supra, at p. 773, 49 Cal.Rptr.2d 813), whereas in this case there is no direct evidence of bias. Nevertheless, this case falls within the exception enunciated in Andrews and Linney. In Andrews, our high court stated that "there are some situations in which the probability or likelihood of the existence of actual bias is so great that disqualification of a judicial officer is required to preserve the integrity of the legal system, even without proof that the judicial officer is actually biased towards a party. [Citations.] In California, these situations are codified in Code of Civil Procedure section 170, subdivisions 1-4.... The evident and justifiable rationale for mandatory disqualification in all such circumstances is apprehension of an appearance of unfairness or bias." (Andrews v. Agricultural Labor Relations Bd., supra, 906"/> 28 Cal.3d at p. 793, fn. 5, 171 Cal.Rptr. 590, 623 P.2d 151.) The Andrews court added that "the instances addressed in section 170, subdivisions 1-4, are entirely distinct from a case in which bias itself is charged under subdivision 5 of that statute as the ground for disqualification. As explained above, the subjective charge of an appearance of bias alone does not suffice to demonstrate that a judicial officer is infected with actual bias." (Ibid.)
In 1984, subsequent to the Andrews decision, the legislature replaced Code of Civil Procedure section 170, subdivision (a)(5), which required a showing of bias in fact, with Code of Civil Procedure section 170.1, subdivision (a)(6)(C).[2] This new provision requires disqualification if a reasonable person would doubt the judge's impartiality. (Catchpole v. Brannon (1995) 36 Cal.App.4th 237, 245-246, 42 Cal.Rptr.2d 440.) "'The reason given for the change [in the statute] is the difficulty in showing that a judge is biased unless the judge so admits. In addition, public perceptions of justice are not furthered when a judge who is reasonably thought to be biased in a matter hears the case.'" (Id., at p. 246, 42 Cal.Rptr.2d 440, quoting United Farm Workers of America v. Superior Court (1985) 170 Cal.App.3d 97, 103,216 Cal.Rptr. 4.)
The court in Linney explained that "Where, as here, prejudice or actual bias is not shown, current law provides an alternative standard for possible disqualification: a judicial officer may be disqualified under the `objective' standard set out in Code of Civil Procedure section 170.1, subdivision (a)(6)(C). `A judge shall be disqualified if any one or more of the following is true: ... a person aware of the facts might reasonably entertain a doubt that the judge would be able to be impartial.'" (Linney v. Turpen, supra, 42 Cal.App.4th at p. 776, 49 Cal.Rptr.2d 813.) "The existence of actual bias is not required." (Flier v. Superior Court (1994) 23 Cal. App.4th 165, 170, 28 Cal.Rptr.2d 383.)
In Chicago Teachers Union, Local No. 1 v. Hudson (1986) 475 U.S. 292, 106 S.Ct. 1066, 89 L.Ed.2d 232, the United States Supreme Court held that the unrestricted selection of a hearing officer by an interested party violated nonunion employees' rights to a fair hearing conducted by an impartial decision maker. Although the Supreme Court in Chicago focused primarily on First Amendment issues, and noted that since First Amendment rights were involved, the procedural safeguards should be carefully tailored to minimize the infringement (Id., at pp. 302-303, 106 S.Ct. 1066), Chicago is nevertheless instructive as to what procedures the United States Supreme Court considers inherently unfair and in violation of due process rights.
The court in Chicago concluded that the union's hearing procedures were constitutionally inadequate because they failed to afford a reasonably prompt hearing before an impartial decision maker. (Chicago Teachers Union, Local No. 1 v. Hudson, supra, 475 U.S. at p. 307, 106 S.Ct. 1066.) In Chicago, the union's president selected the arbitrator from a list of arbitrators accredited by the state board of education and the union paid the arbitrator's fee. The Chicago court stated that "[T]he `most conspicuous feature of the procedure is that from start to finish it is entirely controlled by the union, which is an interested party, since it is the recipient of the agency fees paid by the dissenting employees.'"[3] (Id., at p. 308, 106 S.Ct. 1066.) The Chicago court further stated that review by a Union-selected arbitrator was improper "because the selection represents the Union's unrestricted choice from the state list." (Id., at p. 308, 106 S.Ct. 1066.) The court noted that although a "full-dress administrative hearing, with evidentiary safeguards," (Id., at 907"/> p. 308, fn. 21, 106 S.Ct. 1066) was not required, an expeditious arbitration by an impartial decision maker might be constitutionally satisfactory, "so long as the arbitrator's selection did not represent the Union's unrestricted choice." (Ibid.)
The County relies on Binkley v. City of Long Beach (1993) 16 Cal.App.4th 1795, 20 Cal.Rptr.2d 903, in support of the proposition that concrete evidence of actual bias is required in the instant case. Binkley is inapposite. In Binkley a city police chief challenged the city's termination of his at-will employment as police chief. The police chief claimed he had been deprived of his due process right to a fair and impartial administrative hearing because, among other things, the hearing officer was unilaterally selected by the city and the police chief was not permitted to cross-examine witnesses. On appeal, the Binkley court held that the city had not violated the police chiefs due process rights. Unlike in the instant case, in Binkley the police chief did not have a constitutionally protected property interest because he was an at-will employee. Thus, he was not entitled to the due process protections afforded to a party challenging the deprivation of a constitutionally protected property interest. (Id., at p. 1808, 20 Cal.Rptr.2d 903.)
In Binkley, the police chiefs right to a hearing was premised on his right to "clear his name" pursuant to the Public Safety Officers Procedural Bill of Rights Act (Act) (Gov. Code, § 3300 et seq.), and since the act did not specify any hearing procedures, the court concluded constitutional due process procedures applied. The Binkley court noted that "Decisions of the United States Supreme Court underscore the fact that due process is flexible and calls for such procedural protections as a particular situation demands. [Citation.] Three distinct factors must be considered: [1] the private interest that will be affected by the official action; [2] the risk of an erroneous deprivation of such interest through the procedures used, and [3] the probable value, if any, of additional procedural safeguards; and the government's interest, including the function involved and the fiscal and administrative burdens entailed by imposing additional procedural requirements." (Binkley v. City of Long Beach, supra, at p. 1807, 20 Cal.Rptr.2d 903.)
In the instant case, a constitutionally protected property interest is at stake and the probable value of additional procedural safeguards is significant where deprivation of such a property interest is threatened. Furthermore, imposition of procedural safeguards in selecting an impartial hearing officer would not necessarily significantly burden the County.[4] We have no intention by this opinion of elevating a preference for mutual over unilateral selection to a matter of federal or state constitutional right. Rather, we limit our decision to the totality of the particular circumstances in this case, in which the hearing officer was unilaterally, selected, retained and paid by the party threatening deprivation of an adversary's constitutionally protected property rights; the attorney who retained the hearing officer participated in the hearing; and there was a complete absence of any restrictions on the selection of the hearing officer to ensure a reasonable degree of impartiality. Under such circumstances, we conclude Haas was deprived of his constitutional due process right to a fair hearing conducted by an impartial hearing officer.

4. Disposition

The judgment is affirmed. Haas is awarded costs on appeal.
RICHLI, Acting P.J., and WARD, J., concur.
NOTES
[1] Neither party disputes that Haas was entitled to constitutionally mandated due process procedural protections in appealing revocation of his massage clinic license.
[2] Code of Civil Procedure section 170.1, subdivision (a)(6)(C), provides: "(a) A judge shall be disqualified if any one or more of the following is true: [¶] (6) For any reason ... (C) a person aware of the facts might reasonably entertain a doubt that the judge would be able to be impartial. Bias or prejudice towards a lawyer in the proceeding may be grounds for disqualification."
[3] The Chicago court rejected the union's suggestion that the availability of ordinary judicial remedies was sufficient to satisfy the right to a fair hearing on the ground the union had a responsibility to provide a fair hearing in the first instance, even assuming the courts remained available as the ultimate protectors of constitutional rights. (Chicago, supra, at p. 307, fn. 19, 106 S.Ct. 1066.)
[4] It would be an improper act of judicial activism for this court to instruct the County as to what procedures and restrictions should be implemented, though we emphasize such procedures should attempt to insure reasonable impartiality.