[No. B148286. Second Dist., Div. Seven. Sept. 19, 2002.]

DARRYL BROWN, Plaintiff and Appellant, v.
CITY OF LOS ANGELES et al., Defendants and Respondents.

## COUNSEL

Silver, Hadden & Silver, Stephen H. Silver, Susan Silver and Elizabeth S. Tourgeman for Plaintiff and Appellant.

Rockard J. Delgadillo, City Attorney, Cheryl Ward, Assistant City Attorney, and Matthew C. St. George, Deputy City Attorney, for Defendants and Respondents.

## OPINION

**LILLIE, P. J.**—Darryl Brown (Brown), a police officer for the City of Los Angeles Police Department (Department), appeals from a judgment denying his petition for writ of mandate challenging the Department's downgrade of his advanced pay grade position from Police Officer III to Police Officer II. His principal contentions are that the trial court erred in determining (1) he held no property interest in his advanced pay grade, (2) his petition was premature for failure to exhaust administrative remedies, and (3) procedures for administrative appeal set out in Los Angeles Police Department Administrative Order No. 15 satisfy due process requirements. Brown also challenges the failure of the trial court to grant his request for backpay due to defendants' failure to provide him with a timely administrative appeal.

### FACTUAL AND PROCEDURAL BACKGROUND

A. *Administrative Proceedings.*

Brown was appointed to the Department in November 1989; in 1990 he was promoted to Police Officer II. In 1992 Brown was assigned to the Van Nuys area. In July 1997, he was granted an advanced pay grade to Police Officer III, also known as a Field Training Officer, responsible for training probationary police officers. The Los Angeles City Administrative Code provides for salary levels within a civil service class for pay-setting purposes only; these salary levels are known as pay grades. In the Department, the civil service class of police officer has pay grades of Police Officer I, Police

Officer II, and Police Officer III. The Department has adopted rules and procedures for advancement and downgrade of pay grade within a class. The Los Angeles Police Department Manual, volume 3, sections 763.55 and 763.60 (hereinafter Department Manual Section 763.55 or Section 763.60), provides the current rules and procedures involving administrative downgrades.

On July 28, 1998, Brown was off duty at his residence when he received a telephone call from a police service representative who told Brown she was being chased by a reckless driver near his home; Brown told her to drive to a gas station; soon thereafter, Brown met her at the gas station. Brown detained the reckless driver until on-duty police officers could arrive. The reckless driver accused Brown of using force in an altercation.

On June 24, 1999, Brown was served with notice that he was subject to discipline for alleged misconduct arising out of the July 1998 detention of the reckless driver and alleged false and misleading statements Brown made during an internal affairs interview about the July 1998 incident. Pursuant to Los Angeles City Charter section 202,[1] Brown was ordered to appear at a hearing before the Department's Board of Rights (Board of Rights), which is empowered to conduct a hearing and render recommendations to the chief of police regarding the appropriate form and degree of discipline; the chief may accept or reduce any recommended discipline, but may not increase it.[2]

Also on June 24, 1999, the commanding officer of the Van Nuys Community Police Station sent a memorandum to the commanding officer of the

---

[1]The city charter was revised and renumbered on July 1, 2000. Former section 202, involved on this appeal, now appears in section 1070. Citations to the city charter herein shall refer to the city charter in effect prior to July 1, 2000.

Los Angeles City Charter section 202 (LACC Section 202) provides in pertinent part: "(1) The rights of a tenured officer of the Police Department . . . to hold his or her office or position and to the compensation attached to such office or position is hereby declared to be a substantial property right of which he or she shall not be deprived arbitrarily or summarily, nor otherwise than as herein in this section provided. No tenured officer of the Department shall be suspended, demoted in rank, suspended and demoted in rank, removed, or otherwise separated from the service of the Department (other than by resignation), except for good and sufficient cause shown upon a finding of 'guilty' of the specific charge or charges assigned as cause or causes therefor after a full, fair, and impartial hearing before a Board of Rights . . . ."

[2]Under the provisions of LACC Section 202(13)(e), the Board of Rights, upon a finding of guilty, was required to prescribe its penalty "by written order of either suspension for a definite period not exceeding six months with total loss of pay, and with or without reprimand; or demotion in rank, with or without suspension or reprimand or both; or reprimand without further penalty; or of removal . . . ."

Under the city charter, the Board of Rights did not have the authority to prescribe a penalty of a reduction in pay grade. Under LACC Section 202(13)(f), a "demotion in rank shall mean reduction in civil service classification. The provisions of this section shall not apply to reductions in pay grade or similar personnel actions caused by reassignment, deselection from

human resources bureau recommending that Brown's pay grade of Police Officer III be reduced, apparently pursuant to the "Exception" provision of Department Manual Section 763.60.[3]

The memorandum stated that the reduction in pay grade "is taken separate and apart from any discipline that may result from the referenced, pending personnel investigations." As cited in the memorandum, the grounds for such reduction included the July 1998 incident as well as several personnel complaints from 1990 to 1997; the memorandum also detailed two 1998 disciplinary actions resulting in Brown's suspension for 15 and five days respectively; in the first incident, the Board of Rights found Brown guilty of failing to register his vehicle and discourtesy to Department officers who stopped him for a traffic violation[4]; in a second 1998 incident, the Department suspended Brown for five days for threatening violence to a juvenile while on duty.[5]

Following the June 24, 1999, memorandum, Chief of Police Bernard Parks approved the administrative downgrade; effective July 21, 1999, Brown was downgraded to the pay grade of Police Officer II, which loss in pay equals

bonused positions, and the like. Such reductions shall be administered under policies adopted by the Department."

[3]Department Manual Section 763.60 was apparently adopted pursuant to LACC Section 202(13)(f). Section 763.60 provides essentially a progressive discipline procedure "[w]hen an officer's immediate supervisor becomes aware that the officer is not satisfactorily performing the duties of his or her advanced paygrade position." The supervisor must first counsel the officer regarding the deficiencies and complete various written forms; if the deficiencies continue, the commanding officer is required to complete a performance evaluation report and other interdepartmental correspondence citing the reasons for recommending a reduction in pay grade; the officer must be advised of the right to provide a written response within 30 days of notice of the proposed reassignment to a lower pay grade. All documentation, including the officer's response, must be forwarded to the commanding officer, human resources bureau.

Section 763.60 provides an exception to the above procedures: "Exception: When an officer['s] clearly demonstrated failure or inability to satisfactorily perform the duties of his or her advanced paygrade position, indicate the need for an immediate reassignment in the best interests of the Department, the commanding officer shall temporarily place the officer in a lower paygrade assignment and shall, without delay, forward a Form 15.2, and a Form 1.40 through channels to the Commanding Officer, Human Resources Bureau. The officer shall receive the same paygrade salary pending the concurrence of the Commanding Officer, Human Resources Bureau, in the recommendation that the officer be reassigned to a lower paygrade."

[4]Brown alleges that he was the victim of a racially motivated traffic stop; his claim is currently the subject of a federal civil rights lawsuit brought after he received a right to sue letter from the Equal Employment Opportunity Commission. Brown alleges that the Department was reinvestigating the matter that led to his discipline because the initial investigation was inadequate or incomplete.

[5]In a May 12, 2000, decision, the Board of Rights found Brown not guilty of any misconduct in connection with this April 20, 1998, incident involving a juvenile.

approximately $3,203 per year; he was also transferred to North Hollywood Patrol Division, where he was assigned to work at the desk, an assignment commonly viewed as an additional form of punishment. Brown was not counseled or afforded any notice to correct deficiencies prior to the reduction of his pay grade to Police Officer II. In September 1999, Brown timely filed an administrative appeal with respect to his downgrade. However, because the Department and the Los Angeles Police Protective League (League) were then in the process of negotiations regarding implementation of appeal procedures, Brown's appeal was, according to defendants, "held in abeyance by agreement between the Department and the League."

The Board of Rights hearing on the complaint involving the July 1998 incident was held on September 21 and 22, 1999. The Board of Rights found Brown not guilty of all counts of alleged misconduct relating to the July 28, 1998, incident and relating to the subsequent internal affairs interview. LACC Section 202(13)(e) provides that "If the accused is found 'not guilty,' the Board shall order the officer's restoration to duty without loss of pay and without prejudice, and such order shall be self-executing and immediately effective." LACC Section 202(18) provides in pertinent part that "In any case of exoneration of the accused after a hearing before a Board of Rights, such exoneration shall be without prejudice to such officer."

Brown claims that his job performance has been excellent. A performance evaluation report by the Van Nuys Division for the period of September 1997 to August 31, 1998, rated his job performance strong in all areas and recommended that he "can best improve his performance by promoting to Sergeant." His performance evaluation report by the North Hollywood Patrol Division for the period June 6, 1999, to August 31, 1999, noted that Brown "displays a strong work ethic and is attentive to his job," and "is a good addition to the North Hollywood team."

After his transfer to North Hollywood in July 1999, Brown apparently received some negative performance ratings in a Van Nuys Division transfer report for the period from September 1998 through July 1999. Brown filed a grievance with respect to such evaluation, and in January 2000, an amended transfer report evaluated Brown as "strong" (the highest rating) in only a few areas, and "competent" (the middle level rating, just above "needs improvement") in all others. Although the transfer report noted that Brown received five commendations, it also detailed Brown's complaint history before the July 28, 1998, incident, and concluded that "the latest incident, when viewed in conjunction with Brown's complaint history, constituted a pattern of poor judgment inconsistent with the increased responsibility and trust inherent in the position of Training Officer." The amended transfer report also stated

that the "mention of his downgrade was also left in the rating. The downgrade is based on a pattern of conduct he exhibited from before and during this rating period. The guilt or innocence of his personnel complaint that also resulted from this conduct is a separate issue and was not mentioned or referred to in the rating."[6]

## B. *Trial Court Proceedings.*

On April 17, 2000, Brown filed a verified petition for writ of mandate challenging his reduction of pay grade on essentially three grounds. In a "first cause of action," Brown alleged that his reduction in pay grade, after being exonerated by the Board of Rights, subjected him to double punishment in violation of LACC Section 202(18) and Penal Code section 654. In a "second cause of action," Brown alleged that the Department failed to follow the procedures prescribed in Department Manual Section 763.60 prior to reducing his pay grade, in that he was not counseled or given any notice to correct deficiencies; he further alleged that the July 28, 1998, incident was not, standing alone, sufficient to invoke the "Exception" in Section 763.60. In a "third cause of action," Brown alleged that the Department violated Government Code section 3304, subdivision (b) by failing to provide him with a timely and adequate administrative appeal following his September 1999 request.[7] Brown sought appropriate back compensation and benefits, attorneys fees, and a writ commanding defendants to set aside his reduction in pay grade or to afford him a prompt and adequate administrative appeal consonant with due process principles.

Brown also alleged in his petition that he had exhausted all available administrative remedies; that the only administrative remedies available to him are futile, and he had done all things necessary, if any, prior to maintenance of this action.

In May 2000, defendants City of Los Angeles and Bernard Parks (hereinafter referred to collectively as the Department) answered the petition for writ of mandate, asserting as an affirmative defense, inter alia, that Brown failed to exhaust all his administrative remedies.

After the parties had filed briefs, the court held a hearing on the petition on September 13, 2000. At that time, the Department informed the court that

---

[6]This amended transfer report was prepared after the Board of Rights exonerated Brown of the charges arising out of the July 1998 incident.

[7]Government Code section 3304, subdivision (b), provided: "No punitive action, nor denial of promotion on grounds other than merit, shall be undertaken by any public agency . . . without providing the public safety officer with an opportunity for an administrative appeal." This section was recently amended; the amendment is not pertinent to this appeal.

it had not yet implemented an administrative appeal process but it intended to implement its last, best offer to League, which was then embodied in a special order (Administrative Order No. 15), which was ready to go to the chief of police for his approval. Brown's brief had contended that even if the administrative appeal procedure in the last best offer was adopted by the Department, that procedure still was inadequate and did not meet the requirements of due process. Nevertheless, the court did not allow Brown to argue the point at that time; the court stated that it was concerned about the exhaustion of administrative remedies issue, that it was continuing the matter because it hoped that the Department "might decide this matter [administrative appeal procedures] deserves some attention . . . ." The court stated that it would not decide the petition at that time because "right now I would probably deny your petition . . . for failure to exhaust the administrative remedies."

At a continued hearing on October 31, 2000, the court was informed that the Department expected to implement the new administrative appeal procedure set out in Administrative Order No. 15 sometime in early November. At the hearing on October 31, 2000, Brown again attempted to argue the issue of the inadequacy of the appeal procedures under due process principles and why he should not be required to exhaust administrative remedies under such circumstances. The court again refused to allow Brown to argue the issue, stating that it had read what was in Brown's papers and "unless there's something new and additional that couldn't have been in your papers, that there is no need to argue it further." The court stated that rather than argue the matter, it felt that "I ought to wait and see at least what happens on November 15 . . . when these new rules are supposed to be taking place."

When Brown's counsel again attempted to argue the issue of the futility of the administrative remedy, the court stated, "You are now arguing the merits of this petition for writ, and I am not going to get into that." Brown's counsel responded that she was "arguing the futility of the administrative appeal [procedures]." The court responded that since the special order implementing the new procedures was not yet signed by the chief of police, "I have no idea until I see [the administrative order] whatever this new thing will be." The court stated that it wanted to see the final, adopted procedures, and then it continued the matter to December 1, 2000; after the anticipated adoption of the appeal procedures in early November, the parties were permitted to file supplemental briefs on the issue of the adequacy of the administrative appeal procedures.

On November 15, 2000, Chief Parks signed Administrative Order No. 15, implementing the administrative appeal procedures therein. After supplemental briefs had been filed, and oral argument on December 1, 2000, the

matter was submitted. On December 6, 2000, the court issued a minute order denying the petition "on responding party grounds."

A January 4, 2001, statement of decision states that the petition was denied "as premature for failure to exhaust administrative remedies." The court further found that Brown did not have a property interest in his advanced pay grade as "no such property interest can be found under constitutional due process principles as there is no basis in state law, local Charter or statute for such a claim and, further, that there is no understanding between the parties that such property interest exists." The court found that Brown was entitled to an administrative appeal of his downgrade under Government Code section 3304, subdivision (b); that Administrative Order No. 15 "provides due process rights and protections beyond those required by Government Code section 3304(b), 3306, and is in compliance with Government Code sections 3304.5 and 3310";[8] and that the order provides the following due process protections: notice of reasons for punitive action; right to appeal; representation at the hearing by a representative, legal counsel, or both; random, impartial selection of a hearing officer not in the chain of command or involved in the case; discovery of all reports and materials used to substantiate the decision; right to subpoena and examine witnesses; right to a transcript; and right to a copy of the written decision of the hearing officer and the decision of the chief of police.

Judgment was entered dismissing without prejudice the petition for writ of mandate. Brown filed timely notice of appeal from the judgment. Brown contends that the trial court erred in determining he had no property interest in his advanced pay grade position and in determining that Administrative Order No. 15 complied with due process principles. Brown also contends that the trial court erred in failing to grant his request for backpay due to Department's failure to provide him with a timely administrative appeal, and in failing to grant his request to set aside the reduction in pay grade because LACC Section 202(18) requires reinstatement to his advanced pay grade after he was exonerated of all counts relating to the July 1998 incident, which formed the primary basis for the reduction in pay grade.

---

[8]Government Code section 3300 et seq. is known as the Public Safety Officers Procedural Bill of Rights Act.

Government Code section 3306 affords a public safety officer 30 days to file a written response to any adverse comment entered in his personnel file.

Government Code section 3304.5 provides: "An administrative appeal instituted by a public safety officer under this chapter shall be conducted in conformance with rules and procedures adopted by the local public agency."

Government Code section 3310 provides in pertinent part: "Any public agency which has adopted . . . any procedure which at a minimum provides to peace officers the same rights or protections as provided pursuant to this chapter shall not be subject to this chapter with regard to such a procedure."

DISCUSSION

A. *Respondents' Request for Dismissal of Appeal.*

At the outset, we find without merit respondents' contention that the appeal should be summarily dismissed for appellant's alleged failure to address the issue of the failure to exhaust administrative remedies. Respondents argue that appellant's opening brief allegedly did not challenge the rationale of the judgment (i.e., that his petition was premature for failure to exhaust administrative remedies), and that appellant is therefore seeking review of issues not properly cognizable on this appeal.

We agree with appellant's argument that he is entitled to challenge that aspect of the judgment upholding the adequacy of the administrative appeal procedures in Administrative Order No. 15. To the extent that he is successful in showing the inadequacy of those procedures, he also would have established the futility of exhausting those administrative remedies. Thus, inherent in his challenge to the adequacy of the administrative remedy is a challenge to the correctness of the trial court's denial of the petition on the ground of failure to exhaust those administrative remedies. ■ " 'A party is not required to exhaust the available administrative remedies when those administrative procedures are the very source of the asserted injury. [Citation.] This rule is merely another facet of the inadequate administrative remedy exception to the exhaustion rule.' " (*Unnamed Physician v. Board of Trustees* (2002) 93 Cal.App.4th 607, 621 [113 Cal.Rptr.2d 309].) A remedy is not adequate if it does not square with the requirements of due process. (*Id.*, at p. 620; see also *Bockover v. Perko* (1994) 28 Cal.App.4th 479, 486 [34 Cal.Rptr.2d 423].)

Inasmuch as the trial court addressed the merits of the issue of the adequacy of the administrative appeal procedures, which issue is also addressed by the parties, that issue is properly before us for review.

B. *Standard of Review.*

■ " 'Because [appellant's] contention regarding procedural matters presents a pure question of law involving the application of the due process clause, we review the trial court's decision de novo.' [Citation.] Since the issue presented is on undisputed facts and one of law, we exercise our independent judgment. [Citation.] Further, to the extent we are called upon to interpret statutes or rules dealing with employment of public employees, such issues involve pure questions of law which we resolve de novo. [Citation.]" (*Bostean v. Los Angeles Unified School Dist.* (1998) 63 Cal.App.4th 95, 107-108 [73 Cal.Rptr.2d 523].)

The first principal issue is whether the Department's reduction of Brown's pay grade implicated a property interest under federal due process analysis; if so, the second issue is whether the procedural protections afforded in Administrative Order No. 15 are adequate.

C. *Brown Had a Property Interest in His Advanced Pay Grade.*

■ " 'The Fourteenth Amendment to the United States Constitution "places procedural constraints on the actions of government that work a deprivation of interests enjoying the stature of 'property' within the meaning of the Due Process Clause." ' [Citation.] 'Property interests that are subject to due process protections are not created by the federal Constitution. "Rather, they are created, and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." ' " (*Bostean v. Los Angeles Unified School Dist., supra*, 63 Cal.App.4th 95, 108-109.)

■ "As the United States Supreme Court put it, ' "property" interests subject to procedural due process protection are not limited by a few rigid, technical forms. Rather, "property" denotes a broad range of interests that are secured by "existing rules or understandings." [Citations.] A person's interest in a benefit is a "property" interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit . . . .' (*Perry* v. *Sindermann* [(1972)] 408 U.S. [593,] 601 [33 L.Ed.2d 570, 580, 92 S.Ct. 2694, 2699].)" (*Mendoza v. Regents of University of California* (1978) 78 Cal.App.3d 168, 174 [144 Cal.Rptr. 117], italics omitted [property interest grounded on university rule providing permanent employee could be dismissed only for cause].)

■ "A governing body does not create a property interest in a benefit merely by providing a particular procedure for the removal of that benefit. *See McGraw v. Huntington Beach*, 882 F.2d 384, 389 (9th Cir. 1989) (property cannot be defined by the procedures for its deprivation)." (*Sanchez v. City of Santa Ana* (9th Cir. 1990) 915 F.2d 424, 428.)[9]

California state law or a city rule or regulation may confer a property interest in a benefit if it imposes particularized standards or criteria that

---

[9]"In *Cleveland Bd. of Education v. Loudermill* (1985) 470 U.S. 532, 541 [105 S.Ct. 1487, 1493, 84 L.Ed.2d 494, 503], the high court explained: '[T]he Due Process Clause provides that certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures. The categories of substance and procedure are distinct. Were the rule otherwise, the Clause would be reduced to a mere tautology. "Property" cannot be defined by the procedures provided for its deprivation any more than life or liberty.' " (*Campbell v. State Personnel Bd.* (1997) 57 Cal.App.4th 281, 294-295 [66 Cal.Rptr.2d 722].)

significantly constrain the discretion of the city with respect to that benefit. (*Allen v. City of Beverly Hills* (9th Cir. 1990) 911 F.2d 367, 370.) A statute, rule or regulation may create an entitlement to a governmental benefit either if it sets out conditions under which the benefit must be granted or if it sets out the only conditions under which the benefit may be denied. (*Ibid.*)

Thus, a city police officer was held to have a property interest in his merit pay when the city charter "treated a reduction in pay as a demotion, and, by providing that an employee may be demoted for certain specified reasons, implicitly restricted the City's authority to demote an employee to the specified reasons. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538-39, [105 S.Ct. 1487, 1491-92, 84 L.Ed.2d 494] (1985) (classified civil service employee had property interest in continued employment because a state statute provided that such employees may not be dismissed except for certain specified reasons) . . . ." (*Sanchez v. City of Santa Ana, supra*, 915 F.2d 424, 429.)

■ "Although procedural requirements ordinarily do not transform a unilateral expectation into a protected property interest, such an interest is created if the procedural requirements are intended to be a significant substantive restriction on . . . decision making." (*Stiesberg v. State of California* (9th Cir. 1996) 80 F.3d 353, 356.) Accordingly, while a governing body may elect not to confer a property interest in public employment, it may not constitutionally authorize the deprivation of such interest, once conferred, without appropriate procedural safeguards. (*Coleman v. Department of Personnel Administration* (1991) 52 Cal.3d 1102, 1114 [278 Cal.Rptr. 346, 805 P.2d 300].) When permitted by state law, the conferring of a benefit need not be formally expressed in a statute or a written contract; it can be implied from words or conduct. (*Nunez v. City of Los Angeles* (9th Cir. 1998) 147 F.3d 867, 873, fn. 7.) "Nevertheless, there must be rules or mutually clear understandings securing the commitment." (*Ibid.*)

"In a practical sense a permanent employee's property interest in continued employment embraces his current classification as well as his current salary." (*Ng v. State Personnel Bd.* (1977) 68 Cal.App.3d 600, 606 [137 Cal.Rptr. 387].)

■ Appellant bases his property interest in his advanced pay grade on Department Manual Sections 763.60 (*ante*, fn. 3) and 763.55. Section 763.55 provides: "An officer below the rank of lieutenant in an advanced paygrade position may be reassigned to a lower paygrade position within his/her classification when one of the following conditions exist: [¶] An officer requests reassignment, or [¶] An officer completes a fixed tour of duty in a

position, or [¶] A position is eliminated, or [¶] When an officer clearly demonstrates his/her failure or inability to satisfactorily perform the duties of the position."

In this case, we are concerned only with the last ground cited in Department Manual Section 763.55. When an officer is being reassigned for failure or inability to satisfactorily perform duties, the officer cannot be reassigned to a lower pay grade arbitrarily or without cause; rather, to be subject to a reassignment, it must be shown that the officer clearly has failed to satisfactorily perform the duties of the pay grade position. Under Section 763.60, the officer must be counseled regarding the poor performance and be afforded an opportunity to improve. After the officer "continues" to demonstrate a failure to satisfactorily perform duties, the supervisor can institute proceedings to downgrade the officer. Under the "Exception" set out in Section 763.60, restrictions are also placed on the decision maker: The officer must "clearly demonstrate[ ] failure or inability to perform" his or her duties, and the failure or inability must "indicate the need for immediate reassignment." Thus, by providing that an officer may be subjected to a reduction in pay grade for specified reasons and under certain conditions, Sections 763.55 and 763.60 restrict the Department's authority to initiate a reduction in pay grade to those specified reasons. The express language in those sections imposes certain restrictions on the Department's decisionmaking authority, thus creating expectations and entitlements which are sufficient to give rise to a property interest within the meaning of the due process clause.

Respondents contend essentially that the foregoing provisions in the Department Manual are too vague to significantly limit the decision makers' discretion, providing only "an outline of relevant considerations." Respondents also argue that even if the language in Section 763.60 could be read to create "good cause" before the Department could reassign and reduce an officer's pay grade, a "good cause" standard does not create a constitutionally protected interest because it is not a significant substantive restriction on the Department's ability to act.

Respondents fail to cite any persuasive authority to support their claims. Respondents' reliance on *Schultz v. Regents of University of California* (1984) 160 Cal.App.3d 768 [206 Cal.Rptr. 910] is misplaced, as *Schultz* held that the administrative reclassification of the plaintiff's job category, not in the context of a disciplinary action, did not give rise to the right to a full due process hearing. Here, respondents admitted below that the actions taken with respect to appellant fall within the definition of "punitive action" within the meaning of Government Code section 3304, subdivision (b), and that appellant is entitled to an administrative appeal. (*Ante*, fn. 7.)

Also inapposite is *Ass'n of Orange County Deputy Sheriffs v. Gates* (9th Cir. 1983) 716 F.2d 733 (hereinafter *Gates*), as that case involved the claim by retired sheriffs under medical disability that they had a property interest in a certificate to carry a concealed and loaded weapon. In *Gates*, the court held that the statutory requirement of "good cause" prior to the denial of a weapons certificate (former Pen. Code, § 12027) did not create a constitutionally protected interest because it was not a significant substantive restriction on the basis for the agency's action. (*Gates*, at p. 734.) As *Gates* did not involve the issue of disciplinary matters affecting employment, and dealt with the situation where a plaintiff was seeking to secure a benefit in the first instance, we question its pertinence. Moreover, it has been " ' "widely recognized that if the employee is subject to discharge only for cause, he has a property interest which is entitled to constitutional protection." ' " (*Vernon Fire Fighters Assn. v. City of Vernon* (1986) 178 Cal.App.3d 710, 722 [223 Cal.Rptr. 871].)

We submit that the Department Manual imposes sufficiently specific and substantive criteria controlling the Department's discretion as to create a property interest in the pay grade. In light of this conclusion we need not address appellant's contention that the Department is collaterally estopped to assert that he has no property interest in his pay grade in light of our unpublished opinion in *Cooper v. City of Los Angeles* (July 16, 2001, B142714). *Cooper* reached the same conclusion we have reached. In this regard, appellant has filed a request for judicial notice of the *Cooper* decision under California Rules of Court, rule 977(b)(1). Inasmuch as we have already resolved the issue in appellant's favor, we need not address the issue of collateral estoppel in this context and deny his request for judicial notice of the unpublished opinion. It is also unnecessary for us to address respondents' arguments regarding LACC Section 202; while respondents may be correct that there is nothing therein which creates the property interest, respondents fail to establish that any provision of the city charter precludes the Department from adopting rules which create a property interest in an advanced pay grade.

We now proceed to address the issue of whether the provisions of Administrative Order No. 15 meet the requirements of due process. Appellant does not contend in this case that he was entitled to a predeprivation hearing, so we do not address this point.

D. *Adequacy of Procedures in Administrative Order No. 15.*[10]

Administrative Order No. 15 provides for an appeal procedure which includes the following features: ▉ The employee must be served with

[10]In connection with this issue, appellant requests that we take judicial notice of article 9 of the 2000 to 2003 Memorandum of Understanding (MOU) between the League and City of

written notice of the disciplinary action. Once an officer requests a hearing, a hearing officer must be selected within three days. (2) The appellant selects a hearing officer by drawing three names of members eligible to serve as a hearing officer (i.e., a member of the Department of the rank of captain through deputy chief). (3) The Department's representative and the appellant each strike one name, with the remaining member serving as the hearing officer. (4) No later than five days prior to the date of hearing, appellant is entitled to discovery of all reports and materials used to substantiate the decision to reduce the officer's pay grade. (5) The Department bears no burden of proof at the hearing; evidence is not required, but may be taken from the Department; if the Department elects to present a case, appellant is entitled to such notice at least two days prior to the date of the hearing, but the Department still bears no burden of proof at the hearing. (6) Appellant is entitled to compel attendance of, and/or subpoena, witnesses for the hearing. (7) The hearing officer must convene the hearing within 15 days of being selected, and shall review all reports and evidence. (8) The testimony shall be recorded and transcribed upon request; the employee shall be entitled to a certified copy without charge when the Department has obtained a copy of such transcript, otherwise the employee can obtain a copy of the transcript upon prepayment of the transcript fee. (9) Within 30 days of the conclusion of the hearing, the hearing officer must prepare a report recommending the grant or denial of the appeal and the reasons for such recommendation, and a penalty recommendation if the charges were sustained; appellant is entitled to a copy of the report. (10) After the hearing officer's report (but not necessarily the transcript of the evidentiary hearing) is forwarded to the chief of police, "the Chief of Police shall make the determination in the matter within twenty days of receiving the hearing officer's report." The order containing the final determination by the chief of police must then be served on appellant.

---

Los Angeles. The MOU refers to the administrative appeal procedures to challenge, among other things, "a transfer or assignment," which the parties apparently agree applies to a reduction in pay grade. A "Note" in article 9.2 provides: "The League and its members reserve the right to challenge a dispute concerning a transfer or assignment on constitutional or other legal grounds." Respondent has not filed opposition to appellant's request for judicial notice of the MOU. We grant appellant's request, although we do not rely upon the MOU to resolve any issue on this appeal.

Appellant asserts, correctly, that the League cannot waive or contract away appellant's due process rights. As stated by the court in *Giuffre v. Sparks* (1999) 76 Cal.App.4th 1322, 1330-1331 [91 Cal.Rptr.2d 171]: "We reject as without merit the county's contention that once administrative appeal procedures are established pursuant to an MOU, those procedures control and are not subject to scrutiny or revision by the courts. Procedures established by an MOU are subject to scrutiny to determine whether they satisfy due process requirements and [Government Code] section 3304."

According to appellant's reply brief, the League has challenged the adequacy of the appeal procedures in a case now pending in Division Four of the Second District. (*Los Angeles Police Protective League v. City of Los Angeles*, B151027.)

██ Brown contends that Administrative Order No. 15 violates due process principles in four respects in that it (1) places no burden of proof on the Department, leaving the presentation of evidence to the discretion of the Department; (2) does not require the chief of police, the final decision maker, to apply any substantive guidelines or principles in making the decision, and the chief is not required to uphold the decision of the hearing officer; (3) fails to afford a neutral and impartial decision maker, as the chief is embroiled in the controversy as the person who initially ordered the reduction in pay grade; and (4) does not provide an impartial decision maker because the hearing officers are a "captive group of Department managers" who are presumed to have an impermissible financial interest in an outcome favorable to the Department.

██ Generally, due process is the opportunity to be heard at a meaningful time and in a meaningful manner. (*Burrell v. City of Los Angeles* (1989) 209 Cal.App.3d 568, 576 [257 Cal.Rptr. 427].) "What procedures are constitutionally required under the Fourteenth Amendment if the state seeks to deprive a person of a protected interest is determined by federal law, not state law." (*Bostean v. Los Angeles Unified School Dist., supra,* 63 Cal.App.4th 95, 112.) "[T]o determine what process is constitutionally due, 'we have generally balanced three distinct factors: [¶] "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest." *Mathews* v. *Eldridge* [(1976)] 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 . . . .' " (63 Cal.App.4th at p. 113.)

██ " 'Under the California Constitution, the extent to which procedural due process is available depends on a weighing of private and governmental interests involved. The required procedural safeguards are those that will, without unduly burdening the government, maximize the accuracy of the resulting decision and respect the dignity of the individual subjected to the decisionmaking process. Specifically, determination of the dictates of due process generally requires consideration of four factors: the private interest that will be affected by the individual action; the risk of an erroneous deprivation of this interest through the procedures used and the probable value, if any, of additional or substitute safeguards; the dignitary interest of informing individuals of the nature, grounds and consequences of the action and of enabling them to present their side of the story before a responsible governmental official; and the government interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.' " (*Oberholzer v. Commission on Judicial Performance* (1999) 20 Cal.4th 371, 390-391 [84 Cal.Rptr.2d 466, 975 P.2d 663].)

As acknowledged by the court in *Gilbert v. Homar* (1997) 520 U.S. 924, 932 [117 S.Ct. 1807, 1812, 138 L.Ed.2d 120, 128], an employee has a "significant private interest in the uninterrupted receipt of his paycheck," indicating that the interest affected by the reduction in pay grade is significant. Because the Fourteenth Amendment protects the pursuit of one's profession from abridgment by arbitrary state action (see *Oberholzer v. Commission on Judicial Performance, supra*, 20 Cal.4th 371, 391, fn. 16), it has been recognized that " 'when governmental agencies adjudicate or make binding determinations which directly affect the legal rights of individuals, it is imperative that those agencies use the procedures which have traditionally been associated with the judicial process.' " (*Ibid.*)

"At a minimum, an individual entitled to procedural due process should be accorded: written notice of the grounds for the disciplinary measures; disclosure of the evidence supporting the disciplinary grounds; the right to present witnesses and to confront adverse witnesses; the right to be represented by counsel; a fair and impartial decisionmaker; and a written statement from the fact finder listing the evidence relied upon and the reasons for the determination made." (*Burrell v. City of Los Angeles, supra*, 209 Cal.App.3d 568, 577.) Moreover, while due process does not require the employer to provide the employee with a full trial-type evidentiary hearing prior to the initial taking of punitive action, "a public employee is entitled to a full evidentiary hearing after the disciplinary action is imposed." (*Duncan v. Department of Personnel Administration* (2000) 77 Cal.App.4th 1166, 1176 [92 Cal.Rptr.2d 257].)

In the circumstance where the administrative appeal hearing is the first evidentiary inquiry into the facts giving rise to the punitive action, "[i]t is axiomatic, in disciplinary administrative proceedings, that the burden of proving the charges rests upon the party making the charges." (*Parker v. City of Fountain Valley* (1981) 127 Cal.App.3d 99, 113 [179 Cal.Rptr. 351].) The obligation of a party to sustain the burden of proof requires the production of evidence for that purpose. (*Ibid.*; see also *Pipkin v. Board of Supervisors* (1978) 82 Cal.App.3d 652, 658 [147 Cal.Rptr. 502].)

In light of *Parker* and *Pipkin*, we conclude that Administrative Order No. 15 denies Brown due process by placing the burden of proof on him. Requiring that the Department shoulder the burden of proving the charges against Brown at the administrative appeal will not impose unreasonable fiscal or administrative burdens on the Department; it is likely that the appealing officer will require the attendance and testimony of the witnesses who prepared the underlying documents and reports substantiating the punitive action in any event. Because the relevant witnesses will most

likely already be present at the hearing, it will not create an undue burden on the Department to present its case first and to shoulder the burden of proof.

Consistent with the due process requirement that the Department shoulder the burden of proof is the requirement that the Department shoulder the burden of establishing the requirements for reduction in pay grade as set out in Department Manual Sections 763.55 and 763.60. Nowhere does Administrative Order No. 15 require the Department to establish the requirements for a reassignment to a lower pay grade as set out in the Department Manual. The order merely provides that the purpose of such an appeal "is to provide the employee an opportunity to refute the reasons for the Department's action or omission relating to . . . reassignment from an advanced paygrade position."[11]

When this provision of the order, which fails to require application of any substantive criteria or standards, is considered in conjunction with the lack of any burden of proof on the Department, it is clear that the order fails to afford Brown any meaningful appeal hearing. There is no requirement that the Department come forward with evidence to prove the basis for the reassignment; there is also no requirement that the hearing officer or the chief of police ever find or articulate any facts establishing the criteria for a reassignment as set out in Department Manual Sections 763.55 and 763.60.[12] In other words, there is a total "disconnect" between the substantive limitations on discretion as set out in the Department Manual and the requirements

---

[11]This characterization of the purpose of the administrative appeal hearings is clearly inadequate to vindicate the requirement of Department Manual Section 763.55 that an involuntary reassignment be permitted only under certain circumstances, including "when an officer clearly demonstrates his/her failure or inability to satisfactorily perform the duties of the position." For example, if the Department articulates reasons for a reassignment which, even if true, are insufficient to establish the criteria required by the Department Manual, the procedures set out in the order do not assure that the final decision upholding a punitive action is based on correct legal criteria as set out in the Department Manual. There is no requirement that either the hearing officer or the chief of police ever consider the criteria in the Department Manual.

Moreover, at least theoretically, the hearing officer and chief of police could base a decision upholding reassignment on the determination that Brown failed to adequately refute the Department's reasons, when the Department never provided any evidence to support its reasons in the first instance. This hardly comports with one of the goals of procedural due process, which is to reduce the risk of an erroneous deprivation of a property interest.

[12]According to the MOU of which we take judicial notice, there is also no remedy of administrative mandamus with respect to the administrative appeal. Article 9.7 of the MOU provides: "A. Notwithstanding any provision of this agreement, an administrative appeal shall not be deemed a 'hearing' within the provisions of Code of Civil Procedure section 1094.5. The function of an administrative appeal is advisory only, and neither its findings nor its recommendations shall be subject to judicial review." As we interpret Administrative Order No. 15 and the MOU, the chief of police would make the final decision on Brown's appeal, and there would be no further judicial review of that decision. If our interpretation of the

of the administrative appeal process. The appeal process, by failing to acknowledge the requirement that the Department meet the burden of proof as to certain criteria set out in the manual, and by failing to require the hearing officer or the chief of police to base its decision on such criteria, fails to afford even the most minimal safeguards to protect the erroneous deprivation of Brown's property interest. Accordingly, we agree with appellant's contention that Administrative Order No. 15 is deficient because it fails to require that the chief of police's decision be based on an application of the pertinent substantive criteria.

The circumstances here are thus distinguishable from those in *Burrell v. City of Los Angeles* (1989) 209 Cal.App.3d 568 [257 Cal.Rptr. 427], where city employees challenged the constitutionality of Los Angeles City Charter section 112, which afforded the employee an administrative appeal of a disciplinary measure to the board of civil service commissioners (Board), but required that any reduction in penalty recommended by the Board be with the consent of the same official who originally imposed the discipline. The procedure in *Burrell* was upheld because the Board was required to independently review the sufficiency of the evidence supporting the charges against the employee and if it found "an inadequate basis for the charges, and that the employee is fit to fill his position, the Board is *required* by section 112 to reinstate the disciplined employee. The only limitation on the Board's powers occurs after it has already determined that the charges against the employee are substantiated." (209 Cal.App.3d at p. 584.) Unlike the charter provision in *Burrell*, Administrative Order No. 15 places no such requirements on the hearing officer or the chief of police to reinstate Brown if they independently determine that the evidence is insufficient to support the criteria for a reduction in pay grade as set out in the Department Manual.

The instant order also violates the requirement that the decision maker be neutral because the chief of police initially authorized the punitive action and is also the final decision maker on the administrative appeal. (See, e.g., *Gray v. City of Gustine* (1990) 224 Cal.App.3d 621, 631-632 [273 Cal.Rptr. 730].)[13] The cases acknowledge that in administrative disciplinary matters, the "combination of adjudicative and investigative functions, without more,

---

MOU is correct, then Brown would not even have any opportunity in the court system to vindicate the criteria for reassignment as set out in the Department Manual.

[13]The due process requirement of neutrality is not to be confused with the due process requirement of lack of bias and prejudice. The issue of neutrality appears to be concerned with the fairness of the procedure itself and whether it poses a risk for a "high probability of unfairness." (*Burrell v. City of Los Angeles, supra,* 209 Cal.App.3d 568, 577.) The issue here is the "constitutionality of allowing a decisionmaker to review and evaluate his own prior decisions." (*Id.,* at p. 578.) The issue of neutrality thus appears to focus on the adequacy of the procedural structure itself. On the other hand, the issue of personal or political bias or

does not offend due process," (*Binkley v. City of Long Beach, supra*, 16 Cal.App.4th 1795, 1811), and both federal courts and our state courts acknowledge that a decision maker's "mere involvement in ongoing disciplinary proceedings does not, per se, violate due process principles." (*Burrell v. City of Los Angeles, supra*, 209 Cal.App.3d 568, 582.)

On the other hand, in "*Applebaum* v. *Board of Directors* (1980) 104 Cal.App.3d 648 [163 Cal.Rptr. 831] the court found a lack of procedural fairness where nearly one-half of the members of the panel reviewing a decision to suspend a physician's staff privileges were also members of the committee which had made the original suspension decision." (*Burrell v. City of Los Angeles, supra*, 209 Cal.App.3d 568, 582-583.)

When the other constitutionally inadequate provisions of Administrative Order No. 15 are considered in conjunction with the provision that the chief of police be the final decision maker, we conclude that, as a whole, the procedure fails to inspire confidence that it affords Brown a meaningful administrative appeal. In other words, the combination of procedures set out therein presents an intolerably high risk of unfairness. The procedures which together create that risk of unfairness include the lack of any burden of proof on the Department, the lack of any requirement that the hearing officer or chief of police apply the criteria in the Department Manual for a reduction in pay grade, and the lack of a neutral final decision maker.

Accordingly, a balance of the three *Mathews v. Eldridge* factors leads to the conclusion that the above administrative appeal procedures set out in the order would deprive Brown of his property interest without due process of law under the Fourteenth Amendment. The trial court thus erred in concluding that the above procedures in Administrative Order No. 15 satisfy the requirements of procedural due process.

 We reject, however, appellant's due process challenge to that part of Administrative Order No. 15 requiring that the pool of hearing officers is to be selected from members of Department of the rank of captain through

---

prejudice focuses on the actual adjudicator, and whether or not that person is capable of judging a particular controversy fairly on the basis of its own circumstances. (*Ibid.*) Such bias or prejudice might be demonstrated if the decision maker is shown to have a personal stake in the outcome of the decision, or shows animosity toward the employee (*ibid.*); however, this type of bias and prejudice is not implied and must be clearly established. (*Binkley v. City of Long Beach* (1993) 16 Cal.App.4th 1795, 1810 [20 Cal.Rptr.2d 903].)

On the other hand, in *Haas v. County of San Bernardino* (2002) 27 Cal.4th 1017, 1032-1033 [119 Cal.Rptr.2d 341, 45 P.3d 280], the court held that actual bias need not be shown when the alleged bias is due to a financial interest in the outcome of the dispute; the "appearance of bias that has constitutional significance is not a party's *subjective, unilateral* perception; it is the *objective* appearance that arises from financial circumstances that would offer a possible temptation to the average person as adjudicator." (*Id.*, at p. 1034.)

deputy chief. *Haas v. County of San Bernardino, supra*, 27 Cal.4th 1017, cited by appellant, is distinguishable from this case. In *Haas*, the hearing officers (attorneys licensed to practice law for at least five years) presiding over business license revocations were appointed by the county on a temporary ad hoc basis, whom the county paid according to the duration or amount of work performed. *Haas* held that such a procedure gave hearing officers an impermissible financial interest in the outcome of the hearings: "A procedure holding out to the adjudicator, even implicitly, the possibility of future employment in exchange for favorable decisions creates such a temptation and, thus, an objective, constitutionally impermissible appearance and risk of bias." (27 Cal.4th at p. 1034.)

Unlike the situation in *Haas*, the hearing officers here are Department employees, who, like Brown, would have the same incentives as Brown to perform their job duties fairly and well, and who, like Brown, are peace officers protected by the Public Safety Officers Procedural Bill of Rights. (See *City of Los Angeles v. Superior Court* (1997) 57 Cal.App.4th 1506, 1512, fn. 2 [67 Cal.Rptr.2d 775].) Moreover, unlike the situation in *Haas*, where the hearing officer was selected solely by the county, it is the accused officer who initially selects the three potential hearing officers from the pool of eligible hearing officers. Appellant has failed to establish that the instant procedure for selection of the hearing officer violates principles of due process.

 Appellant contends that the Department is collaterally estopped from basing a reduction in pay grade on charges as to which he was exonerated by the Board of Rights, including the incidents in July 1998 and April 1998. Because this issue may arise on a future administrative appeal (conducted pursuant to procedures which comport with due process), we elect to address it here. Appellant's contention has merit, as respondents would be barred from basing punitive action on these matters pursuant to LACC Sections 202(13)(e) and 202(18), as well as principles of collateral estoppel. (*People v. Sims* (1982) 32 Cal.3d 468, 489 [186 Cal.Rptr. 77, 651 P.2d 321]; *Knickerbocker v. City of Stockton* (1988) 199 Cal.App.3d 235, 242, 244 [244 Cal.Rptr. 764].)

Appellant contends that LACC Section 202 mandates reinstatement to his advanced pay grade position as of July 1999, because he has been exonerated of all wrongdoing at hearings before the board of rights. However, our record indicates that the Department based its reduction in pay grade not only on the incidents for which Brown was subsequently exonerated after hearings before the Board of Rights, but also on several personnel complaints from 1990 to 1997, as well as another 1998 incident which is apparently still being investigated and is related to Brown's civil rights

lawsuit. (See *ante,* fn. 4.) It is for the Department, or a hearing officer, to decide in the first instance whether those remaining incidents for which Brown was not exonerated by the Board of Rights are sufficient to support a reduction in pay grade. We have an insufficient evidentiary record on which to make a determination in appellant's favor. On this ground, the trial court correctly denied that part of appellant's petition for writ of mandate seeking to set aside his reduction in pay grade retroactive to July 1999.

As to the issue of backpay, we reject respondents' argument that appellant is barred from raising this issue on appeal because he failed to include this issue in his proposed statement of decision in the trial court. Given the rationale of the trial court's judgment, that judgment implicitly denied backpay, and it was unnecessary for the trial court to explain the basis for its denial. However, because that issue was litigated below, it has been preserved for our review. Appellant here has not alleged or established the inadequacy of the predeprivation procedures; however because he has successfully challenged the adequacy of the appeal procedures, he is entitled to backpay from the time beginning when he was deprived of an adequate appeal hearing, (i.e., according to those unchallenged provisions of Administrative Order No. 15, 18 days after his request for an appeal filed in September 1999), and continuing up to the time of any future hearing held under proper procedural due process principles. (See, e.g., *Henneberque v. City of Culver City* (1985) 172 Cal.App.3d 837, 843-844 [218 Cal.Rptr. 704].)

### DISPOSITION

The judgment is reversed and the cause is remanded to the trial court with directions to issue a peremptory writ of mandate compelling city to afford Brown an administrative appeal hearing conducted pursuant to a procedure which comports with the requirements of due process; pending that hearing, city is to pay Brown backpay for the period beginning 18 days after the date he requested an administrative appeal and continuing up to the date he is afforded a hearing which comports with the requirements of due process. Appellant is entitled to costs on appeal.

Woods, J., and Perluss, J., concurred.

Respondents' petition for review by the Supreme Court was denied January 15, 2003.